[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Parker Bey v. Byrd*, Slip Opinion No. 2020-Ohio-2766.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-2766

THE STATE EX REL. PARKER BEY, APPELLANT, *v.* BYRD, CLERK OF COURTS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Parker Bey v. Byrd*, Slip Opinion No. 2020-Ohio-2766.]

*Mandamus—Public-records requests—Court of appeals erred in denying complaint on grounds that it did not invoke Sup.R. 44 through 47 as basis for request for court records—Generally, it is not necessary to cite a particular rule or statute in support of a public-records request until requester attempts to satisfy more demanding standard applicable when seeking writ of mandamus to compel compliance with request—State ex rel. Husband v. Shanahan overruled to extent it conflicts with this decision—Unlike case documents, administrative documents are subject to Sup.R. 44 through 47 regardless of when created—Judgment affirmed in part and reversed in part, and cause remanded for court of appeals to apply Public Records Act, R.C. 149.43, to determine whether requester is entitled to writ*

*of mandamus to compel clerk of courts to produce requested journal entries and whether requester is entitled to statutory damages and court costs.*

(No. 2019-0547—Submitted October 2, 2019—Decided May 5, 2020.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 107909, 2019-Ohio-800.

————————

**O'CONNOR, C.J.**

{¶ 1} Appellant, Vincent A. Parker, a.k.a. Vincent El Alan Parker Bey, appeals the judgment of the Eighth District Court of Appeals denying his complaint for a writ of mandamus to compel appellee, Nailah K. Byrd, the Cuyahoga County Clerk of Courts, to produce various court records and denying Byrd's request that Parker Bey be declared a vexatious litigator. We affirm in part and reverse in part the Eighth District's judgment, and we remand the case for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Parker Bey is incarcerated at the Trumbull Correctional Institution. In September 2018, he sent two records requests to Byrd by certified mail. In the first, Parker Bey asked for a copy of a single journal entry from his 1995 criminal case. In the second, he requested copies of three additional journal entries from the 1995 case, as well as a copy of the clerk of courts' records-retention schedule. Byrd did not respond to the first request and provided only one of the journal entries sought in Parker Bey's second request.

{¶ 3} On November 16, 2018, Parker Bey filed a complaint for a writ of mandamus in the court of appeals. Citing the Public Records Act, R.C. 149.43, he sought an order compelling Byrd to provide copies of the remaining three journal entries and a copy of the clerk of courts' records-retention schedule. He also requested court costs and statutory damages.

2

{¶ 4} Byrd moved for summary judgment, arguing that as a matter of law under R.C. 149.43(B), she had no duty to provide the requested records to Parker Bey. Byrd's motion also requested that Parker Bey be declared a vexatious litigator. On January 2, 2019, the court of appeals denied summary judgment, noting that a week after Byrd filed her motion, this court held in *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, ¶ 10, that the Public Records Act did not apply to an inmate's request for court records. However, the court allowed Byrd to file a supplemental brief.

{¶ 5} In her supplemental brief, Byrd argued that pursuant to *Harris*, the Rules of Superintendence govern Parker Bey's request for court records. Because Parker Bey seeks relief under R.C. 149.43, Byrd denied any obligation to produce the records. Nonetheless, Byrd attached copies of two of the requested records to her brief and averred that the other two records do not exist.

{¶ 6} Parker Bey filed a motion to strike Byrd's supplemental brief on the grounds that Byrd had not served him with a copy.[1] The court of appeals denied the motion.

{¶ 7} On March 6, 2019, the court of appeals denied Parker Bey's request for mandamus relief. The court noted that the Rules of Superintendence, not the Public Records Act, apply when an inmate seeks court records and concluded that Byrd therefore has no clear legal duty to provide the requested records under R.C. 149.43. The appeals court declined to declare Parker Bey a vexatious litigator.

{¶ 8} Parker Bey timely appealed, and the matter is fully briefed. In her merit brief, Byrd asks this court to impose sanctions on Parker Bey and to declare him a vexatious litigator, pursuant to S.Ct.Prac.R. 4.03(B) and R.C. 2323.52.

---

1. Because Parker Bey claims that Byrd never served him with a copy of the supplemental brief, it is unclear whether Parker Bey received copies of the records that Byrd attached to the brief.

## ANALYSIS

### *Parker Bey's propositions of law*

{¶ 9} We consider Parker's Bey's propositions of law out of order for ease of analysis.

### The third proposition of law

{¶ 10} As his third proposition of law, Parker Bey argues that under R.C. 149.43, he is entitled to the requested records and to statutory damages and court costs.

### *The journal entries*

{¶ 11} Parker Bey seeks access to three journal entries from his criminal case, which commenced in 1995. Mandamus is the appropriate remedy by which to compel compliance with the Public Records Act. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. The Eighth District denied Parker Bey's request because it was made pursuant to the Public Records Act, not the Rules of Superintendence. However, Sup.R. 47(A)(1) states, "Access to case documents in *actions commenced prior to July 1, 2009*, shall be governed by federal and state law." (Emphasis added.) Journal entries are case documents. *See* Sup.R. 44(C)(1); *State ex. rel. Fernbach v. Brush*, 133 Ohio St.3d 151, 2012-Ohio-4214, 976 N.E.2d 889, ¶ 2. And Parker Bey's case commenced prior to July 1, 2009. Accordingly, this action to compel the production of journal entries from a 1995 case was properly brought under the Public Records Act.

{¶ 12} We have previously recognized that Sup.R. 44 through 47, the public-access provisions of the Rules of Superintendence, apply only to case documents in cases commenced on or after July 1, 2009. In *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 21, fn. 2, this court refused to apply Sup.R. 44 through 47, stating, "This case, which challenges the alleged refusal of a municipal court clerk to timely provide copies of case

documents, involves a 2008 request for records from a case that was commenced in 2006. Sup.R. 44 through 47 became effective on July 1, 2009. Therefore, under Sup.R. 47(A)(1), the court's public-access superintendence rules are inapplicable to [the appellant's] records request." *See also State ex rel. Cincinnati Enquirer v. Lyons*, 140 Ohio St.3d 7, 2014-Ohio-2354, 14 N.E.3d 989, ¶ 11, fn. 2 (lead opinion) (relator properly invoked Public Records Act in 2013 mandamus action seeking documents in actions commenced before July 1, 2009).

{¶ 13} Accordingly, we hold that the court of appeals erred in denying Parker Bey's complaint on the grounds that he did not invoke the Superintendence Rules as the basis for his request. On remand, the court of appeals shall apply the Public Records Act to determine whether Parker Bey is entitled to a writ of mandamus to compel Byrd to produce the requested journal entries and whether Parker Bey is entitled to statutory damages and court costs.

{¶ 14} Both the public-access provisions of the Rules of Superintendence and the Public Records Act favor open access to records. *See* Sup.R. 45(A) ("Court records are presumed open to public access"); *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996) ("R.C. 149.43 is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records"). Neither the statute nor the rules require a requester to identify the legal authority providing a basis for the request when requesting a record, and records that are open to the public should be reasonably provided. *See* Sup.R. 45(B)(1) ("A court or clerk of court shall make a court record available by direct access, promptly acknowledge any person's request for direct access, and respond to the request within a reasonable amount of time"); *accord* R.C. 149.43(B)(1) ("[u]pon request * * *, all public records responsive to the request shall be promptly prepared and made available for inspection"). Generally, it is not necessary to cite a particular rule or statute in support of a records request until the requester attempts to satisfy the more demanding standard applicable when

claiming that he is entitled to a writ of mandamus to compel compliance with the request.

{¶ 15} To the extent that this decision conflicts with this court's decision in *State ex rel. Husband v. Shanahan*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, we overrule that decision as having been incorrectly decided and inconsistent with the clear terms of the Rules of Superintendence. Moreover, we acknowledge that certain language in *Harris*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, may have led to the Eighth District's misapplication of the Superintendence Rules in this case. In *Harris*, we cited the July 1, 2009 effective date of Sup.R. 44 through 47 as support for the conclusion that the Public Records Act did not apply. *Id.* at ¶ 10. In that case, however, the relator was seeking certificates of assignment from his 1991 criminal case. *Id.* at ¶ 4. Although those documents were created before Sup.R. 44 through 47 became effective, there was no reason to conclude in that case that the certificates at issue—if they existed at all—were "case documents" under Sup.R. 44(C) rather than "administrative documents" under Sup.R. 44(G).[2] *See* Sup.R. 44(G)(1) (defining "administrative document" as including documents "created, received, or maintained by a court that serves to record the administrative, fiscal, personnel, or management functions, policies, decisions, procedures, operations, organization, or other activities of the court"). Unlike case documents, administrative documents are subject to Sup.R. 44 through 47 regardless of when the documents were created. *See* Sup.R. 47(A)(2). Accordingly, we correctly applied the Superintendence Rules to the documents at issue in *Harris*.

*The records-retention schedule*

{¶ 16} Parker Bey also requested the Cuyahoga County clerk of courts' records-retention schedule. Byrd stated in her supplemental brief filed in the court

---

2. The documents had not been journalized as entries in the 1991 criminal case.

of appeals that she had no record of Parker Bey's request, but she nonetheless served the schedule on Parker Bey, as reflected by the certificate of service that accompanied the filing. *See* Civ.R. 5(B)(2); *see also Davis v. Immediate Med. Servs., Inc.*, 80 Ohio St.3d 10, 15, 684 N.E.2d 292 (1997). Parker Bey contends that he never received the document. Because Byrd has made clear that she is willing to provide Parker Bey with a copy of the retention schedule, there is no legal dispute here concerning whether Parker Bey is entitled to that record. As a matter of courtesy, Byrd should send Parker Bey a new copy of the retention schedule.

<em>Concerns raised in the separate opinions</em>

{¶ 17} This court is remanding this case to the court of appeals to apply the Public Records Act, and nothing in our decision exempts court records from disclosure or denies a right to court records. Sup.R. 45(A) states that "[c]ourt records are presumed open to public access." Sup.R. 44 recognizes that state or federal law—such as the Public Records Act—may exempt a record from disclosure. Sup.R. 44(C)(2)(a) and (G)(2)(a). And Sup.R. 47(B) states that mandamus relief is available to someone aggrieved by the failure of a court or clerk of court to comply with the public-access provisions of the Rules of Superintendence. Requiring those seeking court records and court administrators responding to such requests to comply with the public-access provisions of the Rules of Superintendence when appropriate is hardly equivalent to this court's exempting itself from the Ohio Civil Rights Act, as the second separate opinion argues. Ultimately, the public-access provisions of the Rules of Superintendence and the Public Records Act can function harmoniously. To the extent that the separate opinions are concerned with the scope or impact of the rules, a rule change,

if found to be worthwhile, may be proposed, submitted for public comment, and vetted for approval.[3]

{¶ 18} It is true that "the clerk is without discretion to disregard a statutory mandate," opinion of Kennedy, J., concurring in judgment only in part and dissenting in part at ¶ 31, and compliance with the public-access provisions of the Rules of Superintendence does nothing to upset that duty. Speculation about contrived conflicts does nothing to further the law regarding open access to court documents. The presumptions of open access in the Public Records Act and the public-access provisions of the Rules of Superintendence function together in the sphere of the judicial branch to address the particularized needs of the court and parties that access the courts.

### The first proposition of law

{¶ 19} In support of his first proposition of law, Parker Bey claims that the court of appeals' entry denying summary judgment improperly fails to note that Byrd had filed a summary-judgment motion and that the entry lacks findings of fact and conclusions of law. But the court of appeals' entry states that "[r]espondent's

---

3. The extensive public input and time involved in developing the public-access provisions of the Superintendence Rules were described as follows:

> The rules were designed by the Supreme Court Commission on the Rules of Superintendence, chaired by Justice Judith Ann Lanzinger, and based in part on the report and recommendations of the Privacy and Public Access Subcommittee of the Supreme Court's Advisory Committee on Technology and the Courts, a subcommittee that included members of the public and the media.
> The rules were published over the course of two years. More than 70 individuals and organizations participated in the extensive public comment periods, including the American Civil Liberties Union of Ohio, the Cleveland Bar Association, the Legal Aid Society of Southwest Ohio, the Ohio Judicial Conference and the Ohio State Bar Association. The commission revised and improved the rules after careful consideration of all comments.

*Public access rules in effect: Court offers training, Web page for local authorities*, 82 Ohio State Bar Assn. Report 636, 638 (2009).

motion for summary judgment is denied," and a court of appeals is not required to issue findings of fact and conclusions of law when ruling on a summary-judgment motion, Civ.R. 52; *Maddox v. E. Cleveland*, 8th Dist. Cuyahoga No. 96390, 2012-Ohio-9, ¶ 23.

### The second proposition of law

{¶ 20} Parker Bey's second proposition of law asserts that the court of appeals should have granted his motion to strike Byrd's supplemental brief because she failed to serve him with a copy of the brief. We will not reverse a court's denial of a motion to strike on appeal absent an abuse of discretion. *State ex rel. Mora v. Wilkinson*, 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 10. Here, Parker Bey fails to explain how the court of appeals' denial of his motion was "unreasonable, arbitrary, or unconscionable," *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 223, 631 N.E.2d 150 (1994). And Parker Bey's attempt to prove lack of service by attaching his inmate mail log to his brief in this court is unavailing. The mail log is not part of the record in this case, and "[a] party cannot introduce new evidence on appeal," *In re Adoption of Z.G.A.*, 2d Dist. Greene No. 2015-CA-51, 2016-Ohio-238, ¶ 29.

### *Sanctions and vexatious-litigator declaration*

{¶ 21} In her brief, Byrd asks us to impose sanctions against Parker Bey and to declare him a vexatious litigator.

{¶ 22} Under S.Ct.Prac.R. 4.03(A), this court may impose sanctions on a party if we determine that the party filed an appeal that "is frivolous or is prosecuted for delay, harassment, or any other improper purpose." And if a party "habitually, persistently, and without reasonable cause engages in frivolous conduct under

division (A)," we may "find the party to be a vexatious litigator." S.Ct.Prac.R. 4.03(B).[4]

{¶ 23} Here, there is no evidence that Parker Bey filed this appeal for delay, harassment, or any other improper purpose, and we do not find that his appeal was frivolous. An appeal is "considered frivolous if it is not reasonably well-grounded in fact or warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." S.Ct.Prac.R. 4.03(A). We decline to impose sanctions on Parker Bey or to declare him a vexatious litigator, and we affirm the judgment of the court of appeals as to Byrd's vexatious-litigator request.

## CONCLUSION

{¶ 24} For these reasons, we affirm in part and reverse in part the judgment of the court of appeals, and we remand the case for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only in part and dissents in part, with an opinion.

DEWINE, J., concurs in judgment only in part and dissents in part, with an opinion.

---

4. Byrd also cites R.C. 2323.52 in support of her request that we declare Parker Bey a vexatious litigator, but that statute governs civil actions to declare a party a vexatious litigator and provides that such actions must be filed in a *common pleas* court.

**KENNEDY, J., concurring in judgment only in part and dissenting in part.**

{¶ 25} I disagree with the majority's conclusions that access to case documents and administrative records under the control of the clerk of a court of common pleas are governed by the Rules of Superintendence. The plain and unambiguous language of R.C. 2303.26 requires the clerk to exercise her powers and duties pursuant to statutes and the common law. The Rules of Superintendence are neither a statute nor a product of common law. The Public Records Act, R.C. 149.43, defines "public record" as a record kept by any public office, R.C. 149.43(A)(1), including the clerk's office, R.C. 149.011(A). Therefore, the clerk is required to provide access to case documents and administrative records pursuant to the Public Records Act.

{¶ 26} For this reason, I would overrule our precedent holding that the Rules of Superintendence govern the people's right of access to court records. *See State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, __ Ohio St.3d __, 2019-Ohio-5157, __ N.E.3d __, ¶ 20; *State ex rel. Husband v. Shanahan*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, ¶ 5; *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, ¶ 10-11; *State ex rel. Richfield v. Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, ¶ 8. I would therefore reverse the judgment of the Eighth District Court of Appeals and remand the case to that court to determine whether appellant, Vincent A. Parker, a.k.a. Vincent El Alan Parker Bey, is entitled to all public records requested but not produced and whether he is entitled to statutory damages and costs for this writ action brought due to the clerk's failure to comply with R.C. 149.43(B). Accordingly, I concur in judgment only in part and dissent in part.

{¶ 27} Parker Bey made two public-records requests to appellee, Nailah K. Byrd, the Cuyahoga County Clerk of Courts, seeking judgment entries in his criminal case as well as the clerk's records-retention schedule. He contends that

Byrd failed to respond to the first of those public-records requests within a reasonable period of time and that she still has not responded to the second request. The court of appeals denied him a writ of mandamus compelling Byrd to respond to his request and rejected his claim for statutory damages and costs for Byrd's failure to comply with the Public Records Act within a reasonable period of time.

{¶ 28} On appeal to this court, Parker Bey presents a straightforward argument: the Public Records Act requires the "person responsible" for public records to make them available on request, R.C. 149.43(B)(1), and pursuant to R.C. 2303.14, the clerk is the "person responsible" for the public records that her office maintains. He further argues that the clerk's records-retention schedule "cannot be obtained through" Sup.R. 44 through 47. Byrd agrees with the appellate court and argues that the Rules of Superintendence apply.

{¶ 29} Resolving this narrow question—whether the Rules of Superintendence control the clerk's duties regarding a public-records request—I begin in a familiar place: statutory construction. Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). "An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. With this understanding, I turn to the statutes that created the office of the clerk, as Parker Bey urges us to do.

### I. The Clerk's Duties Are Controlled by Statute and Common Law

{¶ 30} The General Assembly created the office of the clerk in R.C. 2303.01. R.C. 2303.09 requires the clerk to "file together and carefully preserve in his office all papers delivered to him for that purpose in every action or proceeding," and R.C. 2303.14 directs the clerk to "keep the journals, records, books, and papers appertaining to the court and record its proceedings." R.C. 2303.26 provides, "The clerk of the court of common pleas shall exercise the powers conferred and perform the duties enjoined upon the clerk by *statute and by the common law*; and in the performance of official duties the clerk shall be under the direction of the court [of common pleas]." (Emphasis added.)

{¶ 31} And as a creature of statute, the clerk is without discretion to disregard a statutory mandate. *See Euclid v. Camp Wise Assn.*, 102 Ohio St. 207, 210, 131 N.E. 349 (1921) ("If the Legislature had the power to create, it had the power to destroy, and the power to destroy includes the power to burden or regulate or to impose conditions or restrictions as its judgment shall dictate"). This court has described the clerk's authority as "ministerial," "clerical," "nonjudicial," and without the exercise of discretion or judicial power. *State ex rel. Glass v. Chapman*, 67 Ohio St. 1, 65 N.E. 154 (1902), syllabus ("ministerial" and "nonjudicial"); *Mellinger v. Mellinger*, 73 Ohio St. 221, 227, 76 N.E. 615 (1906) ("clerical"); *Hocking Valley Ry. Co. v. Cluster Coal & Feed Co.*, 97 Ohio St. 140, 141-142, 119 N.E. 207 (1918) (without the exercise of discretion or judicial power). Therefore, based on the plain and unambiguous language of R.C. 2303.26, the clerk's authority in fulfilling her duties is defined by statute and the common law.

{¶ 32} The Public Records Act requires a "person responsible for public records" to make copies of requested public records available within a reasonable period of time. R.C. 149.43(B)(1). The act provides that "public records" are records kept by a "public office," R.C. 149.43(A)(1), which "includes any state agency, public institution, political subdivision, or other organized body, office,

agency, institution, or entity established by the laws of this state for the exercise of any function of government," R.C. 149.011(A). The clerk's office is therefore a public office. The Public Records Act also applies to courts, as "state agency" is defined as including "any court or judicial agency." R.C. 149.011(B). This court has held that when a statute imposes a duty on a particular official to oversee records, that official is the "person responsible" for complying with R.C. 149.43(B). *State ex rel. Mothers Against Drunk Drivers v. Gosser*, 20 Ohio St.3d 30, 485 N.E.2d 706 (1985), paragraph two of the syllabus. Under the Public Records Act, the clerk is therefore the person responsible for the public records she maintains, including court records. R.C. 2303.09 and 2303.14. And to enforce the people's right to access public records, the General Assembly has provided a right to an award of attorney fees, costs, and statutory damages in the appropriate circumstances when access has been improperly denied. *See* R.C. 149.43(C).

**{¶ 33}** The majority looks first to the Rules of Superintendence in determining the clerk's duties regarding a public-records request. Based on the language of Sup.R. 44(C)(1), the majority concludes that because Parker Bey seeks documents from a case that commenced prior to July 1, 2009, the Public Records Act controls. The majority also suggests that because there is no date of demarcation for administrative records in Sup.R. 44 through 47, the Superintendence Rules control Parker Bey's request for a copy of the clerk's records-retention schedule. But the majority's conclusion that the Rules of Superintendence control the clerk's duties regarding a public-records request can be true only if the rules have the force of law comparable to a statute or common law.

## II. The Rules of Superintendence

**{¶ 34}** Relying on the authority granted by Article IV, Section 5(A)(1) of the Ohio Constitution to superintend inferior courts, we adopted Sup.R. 44 through 47 to provide public access to court records, effective July 1, 2009. In 2014, this

14

court began denying access to court records based on the requester's mere failure to allege entitlement to those records under Sup.R. 44 through 47, eventually stating that the Superintendence Rules are the "sole vehicle" for obtaining court records in actions commenced after July 1, 2009. *Richfield*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, at ¶ 8; *Harris*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, at ¶ 10; *Husband*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, at ¶ 5. *But see State ex rel. Vindicator Printing Co. v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, ¶ 1 (explaining that relief rendered pursuant to the Superintendence Rules made a claim under the Public Records Act moot).

{¶ 35} A closer look at our decisions in *Richfield*, *Harris*, and *Husband*, however, demonstrates that we did not just wrongly deny the people's right to access public records based on hypertechnicalities that demanded more than Ohio's notice pleading requires (as explained below in Part III of this opinion). We also failed to engage in any statutory-construction analysis, instead leaping to the conclusion that the Superintendence Rules controlled. In doing so, we failed to appreciate that this court may be abridging the people's substantive right to access court records established under the Public Records Act.

{¶ 36} The majority chides me for engaging in "[s]peculation about contrived conflicts" between the Public Records Act and the Superintendence Rules. Majority opinion at ¶ 18. However, Parker Bey has laid the matter squarely at our feet. Just because Byrd failed to address Parker Bey's statutory argument and the majority turns a blind eye to it as well does not make his argument an apparition. Parker Bey hits the nail on the head when, relying on the clerk's statutory authority, he argues that the Public Records Act controls the clerk's duties and that Sup.R. 44 through 47 cannot apply to the clerk's records-retention schedule.

{¶ 37} Article IV, Section 5 of the Ohio Constitution vests this court with authority to promulgate two types of court rules. First, Section 5(A)(1) states: "In

addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court."

{¶ 38} As commentators have noted, the purpose of this provision was to remedy case-management problems that had caused backlogs in resolving cases. Marburger & Idsvoog, *Access with Attitude: An Advocate's Guide to Freedom of Information in Ohio* 151-152 (2011); Milligan & Pohlman, *The 1968 Modern Courts Amendment to the Ohio Constitution*, 29 Ohio St.L.J. 811, 821-822 (1968). Similarly, we have recognized that the Rules of Superintendence "are designed '(1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts.' " *State v. Steffen*, 70 Ohio St.3d 399, 409, 639 N.E.2d 67 (1994), quoting *State v. Singer*, 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216 (1977).

{¶ 39} Article IV, Section 5(B) authorizes a second type of court rules: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Section 5(B) expressly empowers this court to adopt procedural rules that supersede the enactments of the General Assembly. *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, 69 N.E.3d 664, ¶ 30. But the framers of the Modern Courts Amendment of 1968, which added Section 5(B) to Article IV, placed two important limitations on our authority to supplant the enactments of the General Assembly: first, our procedural rules may not abridge, enlarge, or modify any substantive right; and second, the General Assembly has oversight

because the legislature by joint resolution may disapprove any proposed procedural rule prior to its taking effect. *See* Article IV, Section 5(B), Ohio Constitution.

{¶ 40} In stark contrast, nothing in Article IV, Section 5(A)(1), which empowers our superintendence over the courts, grants this court a similar power to preempt the lawful enactments of the legislative branch of government by adopting a rule under our authority to supervise the lower courts. Unlike Section 5(B), Section 5(A)(1) does not provide that the Superintendence Rules supersede all laws that are in conflict with them, nor does it contain any requirement to submit proposed superintendence rules to the General Assembly for review. Therefore, the Superintendence Rules do not have the same force of law as our procedural rules or a statute. Rather, as the preface to the Superintendence Rules explains, those rules were adopted simply to ensure the "prompt disposition of all causes, at all times, in all courts of this state." And importantly, we have described our superintendence authority as "ensur[ing] that state courts act in compliance and consistency with the will of the General Assembly." *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, ¶ 4, fn. 2.

{¶ 41} Simply put, "[t]he Rules of Superintendence are not designed to alter basic substantive rights * * *." *Singer*, 50 Ohio St.2d at 110, 362 N.E.2d 1216. Ohio courts—including every appellate district—have consistently recognized that the rules adopted pursuant to our supervisory power over lower courts do not supersede statutes with which they are in conflict and do not create either substantive rights or procedural law. *State v. Ventura*, 2016-Ohio-5151, 69 N.E.3d 189, ¶ 24 (1st Dist.); *State v. Keeble*, 2d Dist. Greene No. 03CA84, 2004-Ohio-3785, ¶ 17; *Larson v. Larson*, 3d Dist. Seneca No. 13-11-25, 2011-Ohio-6013, ¶ 13; *In re K.W.*, 2018-Ohio-1933, 111 N.E.3d 368, ¶ 99 (4th Dist.); *Sepich v. Bell*, 5th Dist. Stark No. CA-7350, 1988 WL 17155, *3 (Feb. 8, 1988); *In re T.C.*, 6th Dist. Lucas No. L-15-1106, 2015-Ohio-3665, ¶ 21; *In re Guardianship of Myers*, 7th Dist. Mahoning Nos. 02-CA-6 and 02-CA-42, 2003-Ohio-5308, ¶ 21; *In re*

*A.P.D.*, 8th Dist. Cuyahoga No. 100504, 2014-Ohio-1632, ¶ 13; *In re Z.H.*, 2013-Ohio-3904, 995 N.E.2d 295, ¶ 16 (9th Dist.); *Myers v. Wade*, 10th Dist. Franklin No. 16AP-667, 2017-Ohio-8833, ¶ 22; *In re A.R.*, 11th Dist. Ashtabula No. 2018-A-0078, 2019-Ohio-2166, ¶ 29; *In re Guardianship of Bernie*, 12th Dist. Butler No. CA2018-01-005, 2019-Ohio-334, ¶ 27-28, *appeal not accepted*, 155 Ohio St.3d 1469, 2019-Ohio-2100, 122 N.E.3d 1294.

{¶ 42} As the Third District Court of Appeals has explained,

"whereas rules of procedure adopted by the Supreme Court require submission to the legislature, rules of superintendence are not so submitted and, hence, are of a different category. They are not the equivalent of rules of procedure and have no force equivalent to a statute. They are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants."

(Emphasis omitted.) *Larson* at ¶ 13, quoting *State v. Gettys*, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (3d Dist.1976).

{¶ 43} R.C. 149.43(B)(2) states that "[a] public office also shall have available a copy of its current records retention schedule at a location readily available to the public." By sidestepping Parker Bey's statutory argument, however, the majority evades the issue whether this court's Superintendence Rules may negate a substantive right to specific public records granted by the Public Records Act—i.e., the clerk's records-retention schedule. Parker Bey did not request the *court's* records-retention schedule, he requested the *clerk's* records-retention schedule, by certified mail—in addition to the requested entries. The return receipt showing delivery of that request is attached to the complaint, providing evidence that the request was made and that the clerk's office received

it.  Byrd did not file an answer denying the allegations of the complaint, and evidence that the clerk's office could not find a record of Parker Bey's request does not, standing alone, prove that he did not make the request.  The majority's suggestion that the Superintendence Rules apply to this request because they control access to administrative documents regardless of when the documents were created, *see* Sup.R. 47(A)(2), is contrary to law.

{¶ 44} The clerk is not a "court" subject to our Superintendence Rules.  *See* Article IV, Section 5(A)(1), Ohio Constitution ("the supreme court shall have general superintendence over all courts in the state").  As one court put it, a clerk of courts "is not a judicial officer, and cannot perform judicial duties or act in exercise of the judicial power."  *State v. Wilson*, 102 Ohio App.3d 467, 472, 657 N.E.2d 518 (2d Dist.1995), citing *Mellinger*, 73 Ohio St. 221, 76 N.E. 615.

{¶ 45} And while the clerk may act under the direction of the common pleas court, R.C. 2303.26, this court has no power over the clerk.  Ours is not a unified court system in which separately run courts are consolidated into one centrally managed court system.  And not even the common pleas court, which has the power to direct the work of the clerk, has authority to compel the clerk to disobey a statute.

{¶ 46} This court has recently suggested that the Public Records Act is unconstitutional as applied to court records, because "the 'important constitutional principles of separation of powers' required this court to regulate judicial records through its Rules of Superintendence."  *Parisi*, __ Ohio St.3d __, 2019-Ohio-5157, __ N.E.3d __, at ¶ 16, quoting Moyer, *A message from the Chief Justice: Openness is foundation of Ohio Government*, 81 Ohio State Bar Assn. Report 170, 171 (2008).  Tellingly, however, the majority opinion in *Parisi* is bereft of legal authority or specific analysis either supporting its suggestion that the Public Records Act violates the separation-of-powers doctrine or discussing the purposes of the Rules of Superintendence.

**{¶ 47}** American common law recognized the right of the people to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.*, 73 Ohio St.3d 19, 22, 652 N.E.2d 179 (1995). In fact, we have recognized that the guarantee of open courts under Article I, Section 16 of the Ohio Constitution includes a qualified right to access court records that document the proceedings. *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 8-9.

**{¶ 48}** In 1963, "the General Assembly codified the public's right to access of government records" by enacting R.C. 149.43. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 81, 526 N.E.2d 786 (1988). The Public Records Act reflects the state's policy that "open government serves the public interest and our democratic system," *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20, and "reinforce[s] the understanding that open access to government papers is an integral entitlement of the people, to be preserved with vigilance and vigor," *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 17. This court has never questioned the constitutionality of the General Assembly's inclusion of "any court or judicial agency," R.C. 149.011(B), in the definition of "state agency" as a public office subject to the Public Records Act.

**{¶ 49}** Undisputedly, the General Assembly has plenary power to enact any law that does not conflict with the United States or Ohio Constitution. *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 17. " 'Before any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision.' " *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 127 Ohio St.3d 511, 2010-Ohio-6207, 941 N.E.2d 745, ¶ 10, quoting *Williams v. Scudder*, 102 Ohio St. 305,

307, 131 N.E. 481 (1921). And the power to invalidate a statute "is circumscribed by the rule that laws are entitled to a strong presumption of constitutionality and that a party challenging the constitutionality of a law bears the burden of proving that the law is unconstitutional beyond a reasonable doubt." *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16.

{¶ 50} It is true that Article IV, Section 1 of the Ohio Constitution places all "judicial power" in this court, the courts of appeals, the courts of common pleas, and other courts as the General Assembly may establish. And Article II, Section 32 expressly bars the General Assembly from exercising "any judicial power." But exactly how the Public Record Act impinges upon these constitutional limitations the court in *Parisi* never explains.

{¶ 51} Additionally, there is no indication that the Public Records Act violates the separation-of-powers doctrine by impeding the administration of justice or trammeling the exercise of the judicial function. *See State v. Hochhausler*, 76 Ohio St.3d 455, 463-464, 668 N.E.2d 457 (1996) (statute violated separation-of-powers doctrine by barring a court from granting a stay of an administrative license suspension); *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 11 (statute prohibiting a court from enjoining the taking of private property prior to appellate review is unconstitutional); *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, paragraphs two and three of the syllabus (statutory provisions granting the executive branch the authority to review judicial decisions and to require the reopening of final judgments are unconstitutional). And in the past, we have declared certain judicial records beyond the reach of the Public Records Act. *See State ex rel. Steffen v. Kraft*, 67 Ohio St.3d 439, 619 N.E.2d 688 (1993) (affirming dismissal of mandamus complaint seeking access to judge's personal trial notes).

{¶ 52} But the court in *Parisi* made no attempt to explain how R.C. 149.43 had encroached on the judicial power, and it cited no decision even hinting that the

Public Records Act is unconstitutional as applied to court records or that the records sought were beyond the reach of the act. In fact, we long ago recognized that notwithstanding the inherent authority of courts to promulgate local court rules, *Cassidy v. Glossip*, 12 Ohio St.2d 17, 21, 231 N.E.2d 64 (1967), a local rule that "effectively forb[ade] public access to public records, thereby conflicting with R.C. 149.43(B)," was invalid, *Mothers Against Drunk Drivers*, 20 Ohio St.3d at 33-34, 485 N.E.2d 706 (issuing a writ of mandamus to compel a municipal court to produce court records that met the statute's definition of "public record"); *see also State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 12 (explaining that the expungement statutes "set out the limits of the trial court's jurisdiction to grant a request to seal the record of convictions or charges that have been dismissed").

{¶ 53} The majority in *Parisi* failed to consider these principles and, in effect, presumed that the Public Records Act could no longer apply to court records. However, Article IV, Section 5(A)(1) of the Ohio Constitution, unlike Section 5(B), does not permit Sup.R. 44 through 47 to abridge substantive rights such as those enacted by the Public Records Act. The Public Records Act therefore does not contravene this court's rulemaking power granted by Article IV, Section 5.

### III. Other Concerns about the Majority Opinion

{¶ 54} Although the majority overrules *Husband*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, to a limited extent, it leaves untouched this court's holding in *Husband* that the Superintendence Rules override the Public Records Act, including R.C. 149.43(B)(8), which restricts an inmate's access to certain records. *See id*. at ¶ 10 (O'Connor, C.J., concurring in judgment only) ("Allowing the Rules of Superintendence to control over the Public Records Act unconstitutionally extends the substantive right of inmates to access certain public records beyond the boundaries set by the General Assembly"). Therefore, if R.C. 149.43(B)(8) does not apply to courts and there is no parallel provision in the

Superintendence Rules, then an incarcerated individual may inspect or obtain a copy of a case document "concerning a criminal investigation or prosecution" in an action commenced after July 1, 2009, in clear contravention of the public-policy choice of the General Assembly.

{¶ 55} The majority also compounds the errors of the past by requiring a party seeking court records to plead the specific legal authority granting him access to those records. It states that a public-records request need not "identify the legal authority providing a basis for the request *when requesting a record*" (emphasis added), majority opinion at ¶ 14, yet it requires the requester to identify that authority in the complaint for a writ of mandamus seeking to compel access to those records, *id*. at ¶ 14 ("it is not necessary to cite a particular rule or statute in support of a records request *until* the requester attempts to satisfy the more demanding standard applicable when claiming that he is entitled to a writ of mandamus to compel compliance with the request" [emphasis added]). That conclusion is wholly inconsistent with the concept of notice pleading, under which in Ohio, the complaint in a mandamus action must allege "the mandamus conditions with sufficient particularity so that reasonable notice of the claim is given to the respondent," *State ex rel. Williams Ford Sales, Inc. v. Connor*, 72 Ohio St.3d 111, 113, 647 N.E.2d 804 (1995). "[A] plaintiff or relator is not required to prove his or her case at the pleading stage and need only give reasonable notice of the claim." *State ex rel. Harris v. Toledo*, 74 Ohio St.3d 36, 37, 656 N.E.2d 334 (1995). This procedural pitfall does nothing to aid our resolution of cases involving public-records requests other than winnow out mandamus actions brought by the unwary.

{¶ 56} The majority's resort to judicial modesty rings hollow for two reasons. First, the majority's criticism that this opinion "contrive[s]" a conflict between R.C. 149.43 and the Superintendence Rules is wrong; as set forth above, Parker Bey argued that the clerk is required by statute to comply with R.C. 149.43. Second, and more fundamentally, it is the majority that lacks judicial modesty and

restraint in concluding that we have the power to elevate our Rules of Superintendence as the sole vehicle for obtaining court records, thereby preempting the lawful enactment of the General Assembly. We should "remedy[] a clear mistake before it is repeated again," *State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 1165, ¶ 14; otherwise, judicial restraint is only an accomplice to rejecting the plain meaning of our Constitution.

{¶ 57} Nothing in our constitutional power to superintend Ohio courts permits us to disregard the substantive right of the people to access court records or the substantive limits on that access that have been established by the legislature in the Public Records Act. Nor may we abridge requesters' statutory rights to attorney fees, costs, and statutory damages enacted to enforce the people's right of access in appropriate cases. The Rules of Superintendence are neither a statute nor a product of common law, and they cannot control the exercise of the clerk's duties regarding requests for case documents or administrative records. Only the Public Records Act—the statute—can control the duties of the clerk regarding access to public records. Parker Bey's claims that the clerk violated the Public Records Act by failing to respond to all of his requests and that he is entitled to costs and statutory damages remain live issues.

### IV. Conclusion

{¶ 58} The Rules of Superintendence are neither a statute nor a product of common law. The plain and unambiguous language of R.C. 2303.26 requires the clerk to comply with all statutes and the common law in the exercise of her powers and duties. The Public Records Act defines a public record as a record kept by any public office, R.C. 149.43(A)(1), including the clerk's office, R.C. 149.011(A). Therefore, the Public Records Act controls the clerk's duties regarding a request for case documents or administrative records. I would overrule our precedent holding that the Superintendence Rules—not the Public Records Act—govern the people's access to court records. *See Parisi*, __ Ohio St.3d __, 2019-Ohio-5157,

__ N.E.3d __, at ¶ 20; *Husband*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, at ¶ 5; *Harris*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, at ¶ 10-11; *Richfield*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, at ¶ 8.

{¶ 59} For this reason, I would reverse the judgment of the Eighth District Court of Appeals and remand the case to that court to determine whether Parker Bey is entitled to all the public records that were requested but not produced and whether he is entitled to statutory damages and costs for this writ action brought due to Byrd's failure to comply with R.C. 149.43(B). Therefore, I concur in judgment only in part and dissent in part.

_____

**DEWINE, J., concurring in judgment only in part and dissenting in part.**

{¶ 60} I write separately because I believe that the Public Records Act applies to the judiciary, just as it does to the rest of state government. We are not above the law. And we do not possess the authority to simply decree—without any reasoned basis in law—that an enactment of the General Assembly does not apply to us.

{¶ 61} The majority is correct in its determination that the Eighth District Court of Appeals erred in denying Vincent El Alan Parker Bey's complaint on the grounds that he did not cite the Rules of Superintendence as the basis for his public-records request. But the other separate opinion is also right to say that this court should explicitly overrule our prior decisions holding that the Public Records Act does not apply to the judiciary. Let me add a few more thoughts about why those decisions should be repudiated.

{¶ 62} As Justice Kennedy points out, in prior opinions devoid of legal reasoning on the subject, this court has ordained that the Public Records Act does not apply to the judicial branch of government. *See State ex rel. Richfield v. Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, ¶ 8; *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, ¶ 10; *State ex rel.*

*Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, __ Ohio St.3d __, 2019-Ohio-5157, __ N.E.3d __, ¶ 21. Today we learn from the majority that the Public Records Act does apply to requests for case documents from actions commenced prior to July 1, 2009. But by leaving undisturbed this court's decisions in *Laria*, *Harris*, and *Parisi*, the majority implies that the Public Records Act doesn't apply to requests for documents from cases commenced on or after July 1, 2009, and that it doesn't apply to any request for administrative court documents.

{¶ 63} Pause for a moment and consider what it means for a court to announce that it will not follow a law adopted by the General Assembly. If the Public Records Act doesn't apply to the courts, what other laws can this court exempt itself from? The Ohio Civil Rights Act bars discrimination on the basis of race, color, religion, sex, military status, familial status, national origin, disability, age, or ancestry. *See* R.C. 4112.01 et seq. It also prescribes procedures for handling charges of unlawful discrimination, including granting powers to the Civil Rights Commission to investigate allegations of discrimination. *See* R.C. 4112.04 and 4112.05. Could this court, through our superintendence powers, effectively immunize court officials from investigation? Could we use those powers to adopt our own process for handling allegations of discrimination, thereby thwarting the rights granted under the Civil Rights Act? The obvious answer to both questions should be no; this court is not above the law. Why then is the Public Records Act any different? Or consider that R.C. 3517.10 requires anyone running a campaign for public office to file a statement documenting contributions and expenditures. Again, it should be obvious that this court cannot use the Rules of Superintendence to modify or eliminate that requirement for judicial campaigns. But it's unclear why the Public Records Act is any different. Or consider that the bribery statute makes it illegal for a public servant to accept things of value for corrupt purposes. *See* R.C. 2921.02(B). Unquestionably, that provision applies to judges, too, regardless of what we put in the Rules of Superintendence.

{¶ 64} So, one wants to know—is there some reasoned legal basis for saying that the Public Records Act is any different from the multitude of other laws that unquestionably apply to the courts? This court hasn't offered one. Indeed, in the series of decisions announcing that the Public Records Act doesn't apply to requests for certain court documents, the court has done nothing to explain why the act should be treated differently from the many other statutes that impose obligations on public officials. One is left with the impression that the court's decision to exempt itself from the Public Records Act is wholly arbitrary, based not on law but on judicial whim.

{¶ 65} Do not overlook the extraordinary breadth of what this court has done. The exemption from the Public Records Act applies not just to pleadings and the like but also to "administrative documents." Indeed, the majority's reasoning implies that administrative documents are exempt from disclosure under the Public Records Act, no matter when they were filed. *See* majority opinion at ¶ 15. Administrative documents include fiscal records detailing how Ohio courts are spending taxpayer dollars. Sup.R. 44(G).[5] Thus, the implication is that this court can unilaterally exempt itself from public scrutiny of its financial dealings. That runs counter to the clear statutory text and evident purpose of the Public Records Act and to the principles of good governance that the act supports.

{¶ 66} One might be tempted to protest that these worries are overstated because this court, in its beneficence, has decided that the public may access our records through the Rules of Superintendence. But that misses the point. The right to court records shouldn't be a matter of this court's beneficence. The General Assembly has passed a law enabling the public to scrutinize the dealings of the

---

5. Sup.R. 44(G) provides that " '[a]dministrative document' means a document and information in a document created, received, or maintained by a court that serves to record the administrative, fiscal, personnel, or management functions, policies, decisions, procedures, operations, organization, or other activities of the court, subject to the exclusions in division (G)(2) of this rule."

public institutions that serve them. Under our constitutional system, that scrutiny is something that the people ought to be able to achieve through their elected representatives in the General Assembly. It should not be something that can be achieved only through the beneficent prerogative of the courts.

{¶ 67} Moreover, the Rules of Superintendence aren't an adequate substitute for what the General Assembly achieved with the Public Records Act. The Public Records Act, unlike the Rules of Superintendence, contains terms meant to ensure that public entities comply with its mandates; officials who do not timely comply with record requests may be subject to the payment of statutory damages, court costs, and attorney fees. *See* R.C. 149.43(C). There is no reason these same strictures should not apply to the courts.

{¶ 68} Thus, while the majority rightly holds that Parker Bey is entitled to the journal entries he seeks in this case, I cannot support its reasoning. And I disagree with the majority's refusal to apply the Public Records Act to Parker Bey's request for the record-retention schedule. I therefore concur in the court's judgment insofar as it remands the matter to the court of appeals for it to apply the Public Records Act to his request for the journal entries. But I would also require the court of appeals to apply the Public Records Act to Parker Bey's request for the record-retention schedule.

_____

Vincent El Alan Parker Bey, pro se.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian R. Gutkoski, Assistant Prosecuting Attorney, for appellee.

_____