[Cite as *In re A.P.*, 2022-Ohio-1577.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

IN THE MATTER OF:          :    CASE NO. 21CA14
                                    21CA15
  A.P. AND R.P.,           :

  Dependent Children.      :DECISION & JUDGMENT ENTRY

_____

APPEARANCES:

Robert W. Bright, Middleport, Ohio, for Appellant.

Jason Holdren, Gallia County Prosecuting Attorney, Emily
VanSickle, Assistant Gallia County Prosecuting Attorney, and
Randy Dupree, Assistant Gallia County Prosecuting Attorney,
Gallipolis, Ohio, for Appellee.

_____

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:5-4-22
ABELE, J.

{¶1}  This is an appeal from a Gallia County Common Pleas

Court, Juvenile Division, judgment that granted Gallia County

Job and Family Services, appellee herein, permanent custody of

six-year-old A.P., and five-year-old R.P.  C.G., the children's

biological mother and appellant herein, raises the following

assignments of error for review:

        FIRST ASSIGNMENT OF ERROR:

        "THE JUVENILE COURT DID NOT FOLLOW AND/OR
        MISAPPLIED THE FACTORS FOUND IN R.C.
        2151.414."

SECOND ASSIGNMENT OF ERROR:

"THE REPORT OF THE GUARDIAN AD LITEM DOES
NOT COMPLY WITH SUPERINTENDENCE RULE 48.06
AND THE GUARDIAN AD LITEM DID NOT TESTIFY."

{¶2} In 2017, appellant's infant child, R.P., was diagnosed with an unexplained skull fracture and a brain bleed. At the time, R.P. lived with A.P., appellant, and her father. Appellee removed R.P. and A.P. from their parents' custody and developed a case plan. Appellant completed the case plan, separated from the children's father, and appellee returned the children to appellant's custody.

{¶3} On October 12, 2018, R.P., then almost two years old, was admitted to the hospital with unexplained injuries that occurred while in appellant's care and custody. Medical professionals later determined that the child had sustained a skull fracture, broken fingers, and leg fractures.

{¶4} On October 15, 2018, appellee filed a complaint that alleged A.P. is a dependent child and that R.P. is a dependent and abused child. Appellee alleged that R.P. had suffered several unexplained injuries while in appellant's care and custody and that A.P. had bruising on her face. Appellee asserted that "the children are at significant risk of further and/or potential harm" and requested emergency temporary custody. Subsequently, the trial court granted appellee temporary custody of the children.

{¶5} On November 19, 2018, appellant admitted the allegations contained in the complaints, and the trial court adjudicated the children dependent. The court continued the temporary custody order pending disposition. On December 20, 2018, the parties agreed to continue the children in appellee's temporary custody.

{¶6} On November 14, 2019, appellee filed a motion for permanent custody of the children and alleged (1) the children had been in temporary custody for 12 or more months of a consecutive 22-month period, (2) the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, and (3) placing the children in appellee's permanent custody is in the children's best interests.

{¶7} On January 2, 2020, appellant filed a motion to stay appellee's permanent custody motion so that she could complete one last case plan requirement. Appellant alleged she had completed all case plan requirements except a mental health evaluation. Appellant stated that she has been unable to complete the evaluation "due to insurance restrictions" and that she is "working diligently to get this completed." The trial court granted appellant's motion.

{¶8} At a June 9, 2020 review hearing, the trial court noted that appellant still had to complete a mental health evaluation. Appellee recommended that the court continue temporary custody to provide additional time to complete a mental health evaluation. The court thus continued the children in appellee's temporary custody.

{¶9} In February 2021, the state charged appellant with two counts of third-degree-felony endangering children in violation of R.C. 2919.22(A). Appellant then requested multiple continuances of the permanent custody hearing in order to complete discovery and negotiations in the criminal matter.

{¶10} In May 2021, appellant filed a motion to ask the trial court to place the children in the foster mother's legal custody. Appellee also renewed its permanent custody motion.

{¶11} In October 2021, the trial court held a hearing to consider appellee's permanent custody motion. At the hearing, Gallia County Department of Job and Family Services Caseworker Kristi Smith testified that she first worked with the family in 2017, when appellee received a report that R.P. had been abused. Smith explained that the initial report stated that R.P. "was in distress" and taken to the hospital. Doctors discovered R.P.

"had a brain bleed" and a skull fracture. Smith stated that the agency developed a case plan for the family and that R.P. later was reunified with appellant.

{¶12} Caseworker Smith related that appellee continued to receive "multiple reports of abuse and neglect" after the children had been reunited with appellant. Smith stated that in September 2018,[1] R.P. again went to the hospital. Doctors discovered that R.P.'s right and left fibula were broken, her right and left tibias were broken, she had "cauliflower ear" and an eye infection. Appellee again removed the children from appellant's custody and developed another case plan aimed at reunification.

{¶13} The family's current caseworker, Jessica McCoy, testified that the case plan required appellant to complete parenting classes, obtain a mental health evaluation, and maintain a stable and sanitary home, among other things. McCoy stated that the parents completed parenting classes and mental health evaluations.

{¶14} Caseworker McCoy explained that the children have been

---

[1] The complaint states that R.P. went to the hospital in October, not September, 2018. The transcript of Smith's testimony, however, indicates that R.P. went to the hospital in September 2018. The record does not contain any explanation for the apparent discrepancy.

in the same foster home since their October 2018 removal. McCoy indicated that the children are doing well in the foster home and that the foster mother ensures that all of their needs are met.

McCoy also does not believe the children can safely be returned to either parent. She believes that placing them in appellee's permanent custody is in their best interests.

{¶15} The trial court asked Caseworker McCoy whether she discussed appellant's request that the court grant the foster mother legal custody of the children. McCoy indicated that appellee would like to obtain permanent custody of the children and that the foster mother "is not willing to do the legal custody," but rather would like to adopt the children.

{¶16} Appellant testified that she does not believe that she presently can care for the children. She advised the trial court that she would like the children to remain with the foster parent until appellant is able to "get on [her] feet." Appellant also revealed that her criminal charges are pending and she intends to plead guilty to the two counts of endangering children. Appellant explained that when R.P.'s 2018 injuries were discovered, she had been living with a boyfriend and she believes her boyfriend caused the injuries.

**{¶17}** The foster mother testified that the children have been in her home since their removal. She stated that R.P. "is non-verbal," "cannot communicate," and takes seizure medication. Appellant's counsel asked the foster mother why the foster mother was not willing to accept legal custody of the children and the foster mother responded: "These children are like my own. You don't take two little girls that's [sic] been abused and keep them three years and not learn to love them."

**{¶18}** On November 3, 2021, the trial court granted appellee permanent custody of the two children. The court found (1) the children have been in appellee's temporary custody for 12 or more months of a consecutive 22-month period, and (2) the children cannot be placed with either parent within a reasonable time. The court additionally determined that placing the children in appellee's permanent custody is in their best interests. The court found that the children need a legally secure permanent placement that can only be achieved by granting appellee permanent custody. The court noted that (1) the children have been in appellee's temporary custody for more than two and one-half years and that "finalization is important," (2) the children are bonded to their foster mother and that "[t]here is a strong possibility of adoption by the foster mother," and

(3) the guardian ad litem (GAL) recommended that the court grant appellee permanent custody.

**{¶19}** Thus, the trial court awarded appellee permanent custody of the children and denied appellant's request to place the children in the foster mother's legal custody. This appeal followed.

I

**{¶20}** In her first assignment of error, appellant asserts that the trial court's decision to grant appellee permanent custody of the children is against the manifest weight of the evidence. In particular, appellant challenges the trial court's findings that (1) appellant failed to remedy the problems that led to the children's initial removal, (2) appellant demonstrated a lack of commitment toward the children, and (3) the children cannot be placed with appellant within a reasonable time.

A

**{¶21}** Generally, a reviewing court will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *E.g., In re B.E.*, 4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 27; *In re R.S.*, 4th Dist. Highland No. 13CA22, 2013-Ohio-5569, ¶ 29.

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990).

**{¶22}** When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court "'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'"  *Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶¶ 23-24.  We further observe, however, that

issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984):

> The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.

{¶23} Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). *Accord In re Christian*, 4th Dist. No. 04CA 10, 2004-Ohio-3146, ¶ 7.

{¶24} The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as

> to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."); *In re Adoption of Lay*, 25 Ohio St.3d 41, 42-43, 495 N.E.2d 9 (1986). *Cf. In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence").

**{¶25}** Thus, if a children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 62 (4th Dist.); *In re R.L.*, 2nd Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 17, quoting *In re A.U.*, 2nd Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9 ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.'").

**{¶26}** Once a reviewing court finishes its examination, the judgment may be reversed only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a trial court's permanent custody

decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" *Id.*, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

B

**{¶27}** We recognize that "parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by th[e United States Supreme] Court.'" *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("natural parents have a fundamental right to the care and custody of their children"). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re*

*Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); *Murray*, 52 Ohio St.3d at 157, 556 N.E.2d 1169.

**{¶28}** A parent's rights, however, are not absolute. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974). Thus, the State may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶ 11.

**{¶29}** Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. *Id.* Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect children, 'whenever possible, in a family

environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'" *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29, quoting R.C. 2151.01(A).

C

**{¶30}** A children services agency may obtain permanent custody of a child by (1) requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353, or (2) filing a motion under R.C. 2151.413 after obtaining temporary custody. In this case, appellee sought permanent custody by filing a motion under R.C. 2151.413. When an agency files a permanent custody motion under R.C. 2151.413, R.C. 2151.414 applies. R.C. 2151.414(A).

**{¶31}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no

relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶32} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.

{¶33} In the case at bar, the trial court found that the children had been in the agency's temporary custody for more than 12 months of a consecutive 22-month period, and thus, that R.C. 2151.414(B)(1)(d) applies. The court additionally found, pursuant to R.C. 2151.414(B)(1)(a), that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent.

{¶34} Appellant does not challenge the trial court's R.C. 2151.414(B)(1)(d) finding. Instead, appellant disputes the trial court's alternate R.C. 2151.414(B)(1)(a) finding and its

corresponding findings under R.C. 2151.414(E).[2]

**{¶35}** As we have noted in previous cases, R.C. 2151.414(B)(1)(a), by its terms, is inapplicable when a child has been in a children services agency's temporary custody for twelve or more months of a consecutive twenty-two month period.

---

[2] R.C. 2151.414(E) lists the factors that a trial court should consider when determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with either parent. In the case sub judice, the trial court found that the following R.C. 2151.414(E) factors applied:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * * *
(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * * *
(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 * * * and the child or a sibling of the child was a victim of the offense * * *.

GALLIA, 21CA14 AND 21CA15

*In re S.S.*, 4th Dist. Jackson No. 16CA7, 2017-Ohio-2938, ¶ 126, citing *In re Damron*, 10th Dist. Franklin No. 03AP-419, 2003-Ohio-5810, ¶ 9 ("The plain language of R.C. 2151.414(B)(1)(a) reveals that this subsection is only triggered when none of the remaining * * * subsections are triggered."). Consequently, when a child has been in a children services agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court need not find that the child cannot or should not be placed with either parent within a reasonable time. *E.g., In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 21; *In re A.M.1*, 4th Dist. Athens Nos. 10CA21 through 10CA31, 2010-Ohio-5837, ¶ 31; *In re T.F.*, 4th Dist. Pickaway No. 07CA34, 2008-Ohio-1238, ¶ 23; *In re Williams*, 10th Dist. Franklin No. 02AP-924, 2002-Ohio-7205.

{¶36} We further observe that the statute requires the trial court to find the existence of only one of the R.C. 2151.414(B)(1) factors. *See In re W.W.*, 1st Dist. Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 54 (if one of R.C. 2151.414(B)(1) factors exists, court need not find that other (B)(1) factors apply). If the court finds that R.C. 2151.414(B)(1)(d) applies, then it need not also find that the child cannot or should not be placed with either parent within a

reasonable time. Thus, when considering a R.C. 2151.414(B)(1)(d) permanent custody motion, the only other consideration becomes the child's best interest. *In re N.S.N.*, 4th Dist. Washington Nos. 15CA6, 15CA7, 15CA8, 15CA9, 2015-Ohio-2486, ¶ 52; *In re Berkley*, 4th Dist. Pickaway Nos. 04CA12, 04CA13, 04CA14, 2004-Ohio-4797, ¶ 61.

**{¶37}** In the case sub judice, as we stated above, the trial court found that R.C. 2151.414(B)(1)(d) applies. This one factor alone suffices for purposes of R.C. 2151.414(B)(1). The court, therefore, did not also need to find that R.C. 2151.414(B)(1)(a) applies.

**{¶38}** Consequently, even if for purposes of argument, we agreed with appellant that the trial court's R.C. 2151.414(B)(1)(a) and corresponding R.C. 2151.414(E) findings are against the manifest weight of the evidence, appellant has not suggested that the court's R.C. 2151.414(B)(1)(d) finding is against the manifest weight of the evidence. Thus, because the court's R.C. 2151.414(B)(1)(d) finding alone suffices, we need not consider whether the trial court's superfluous R.C. 2151.414(B)(1)(a) and (E) findings are against the manifest weight of the evidence.

**{¶39}** We further note that, because appellant did not argue

on appeal that the trial court's best-interest findings are against the manifest weight of the evidence, we do not address the court's best-interest findings. Instead, we simply note that the record contains ample clear and convincing evidence to support the court's determination that placing the children in appellee's permanent custody is in their best interests.

{¶40} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶41} In her second assignment of error, appellant asserts that the trial court erred by relying upon the GAL's report. Appellant argues that the GAL's report does not comply with Sup.R. 48.06 and is "sorely lacking in details." Within her second assignment of error, appellant also contends that her trial counsel performed ineffectively by failing to call the GAL as a witness.

A

{¶42} We initially observe that, during the trial court proceedings, appellant did not assert that the GAL's report failed to comply with Sup.R. 48.06.[3] It is well-settled that a

---

[3] Sup.R. 48.06 contains the general requirements for a guardian ad litem's report. The rule states as follows:

(1) A guardian ad litem shall prepare a written final report, including recommendations to the court, within the times set forth in this division. The report shall affirmatively state that responsibilities have been met and shall detail the activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted, and all other relevant information considered by the guardian ad litem in reaching the recommendations and in accomplishing the duties required by statute, by court rule, and in the order of appointment from the court.

(2) All reports shall include the following warning: "The guardian ad litem report shall be provided to the court, unrepresented parties, and legal counsel. Any other disclosure of the report must be approved in advance by the court. Unauthorized disclosure or distribution of the report may be subject to court action, including the penalties for contempt, which include fine and/or incarceration."

(3) Oral and written reports shall address relevant issues, but shall not be considered determinative.

(4) A guardian ad litem shall be available to testify at any relevant hearing and may orally supplement the report at the conclusion of the hearing.

(5) A guardian ad litem may provide an interim written or oral report at any time.

(B) Guardian Ad Litem Reports in Abuse, Neglect, Dependency, Unruly, and Delinquency Reports.

(1) A guardian ad litem in abuse, neglect, dependency, unruly, and delinquency cases and actions to terminate parental rights shall provide a written report to the court, unrepresented parties, and legal counsel not less than seven days prior to any initial dispositional hearing, permanent custody hearing, and any hearing upon a motion requesting a change in disposition. The court may alter the seven-day period as may be necessary for the administration of justice.

(2) A court shall review all guardian ad litem reports, written or oral, to ensure that the guardian ad litem has performed those responsibilities required by R.C. 2151.281.

party may not raise new issues or legal theories for the first time on appeal. *Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975). Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal. *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 ("an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 21 (defendant forfeited his constitutional challenge by failing to raise it during trial court proceedings); *Gibson v. Meadow Gold Dairy*, 88 Ohio St.3d 201, 204, 724 N.E.2d 787 (2000) (party waived arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings); *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (appellant cannot "present * * * new arguments for the first time on appeal"); *accord State ex rel. Jeffers v. Athens Cty. Commrs.*, 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, 2016 WL 7230928, fn.3 ("[i]t is well-settled that failure to raise an argument in the trial court results in waiver of the argument for purposes of appeal"); *State v. Anderson*, 4th Dist.

Washington No. 15CA28, 2016-Ohio-2704, ¶ 24 ("arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal").

{¶43} Appellate courts may, however, in certain circumstances, consider a forfeited argument using a plain-error analysis. *See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27 (reviewing court has discretion to consider forfeited constitutional challenges); *see also Hill v. Urbana*, 79 Ohio St.3d 130, 133-34, 679 N.E.2d 1109 (1997), citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus (stating that "[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it'"); *State v. Pyles*, 7th Dist. Mahoning No. 13-MA-22, 2015-Ohio-5594, ¶ 82, quoting *State v. Jones*, 7th Dist. No. 06-MA-109, 2008-Ohio-1541, ¶ 65 (the plain error doctrine "'is a wholly discretionary doctrine'"); *DeVan v. Cuyahoga Cty. Bd. of Revision*, 8th Dist. Cuyahoga, 2015-Ohio-4279, 45 N.E.3d 661, ¶ 9 (appellate court retains discretion to consider forfeited argument); *see Rosales-Mireles v. United States*, ___ U.S. ___, 138 S.Ct. 1897, 1904,

201 L.Ed.2d 376 (2018) (court has discretion whether to recognize plain error).

**{¶44}** For the plain error doctrine to apply, the party claiming error must establish (1) that "'an error, i.e., a deviation from a legal rule" occurred, (2) that the error was "'an "obvious" defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001, 1003 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings."). For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Barnes*, 94 Ohio St.3d at 27; *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, ¶ 14.

**{¶45}** The plain error doctrine is not, however, readily

invoked in civil cases. Instead, an appellate court "must proceed with the utmost caution" when applying the plain error doctrine in civil cases. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The Ohio Supreme Court has set a "very high standard" for invoking the plain error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 721 N.E.2d 47 (2000). Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d at 122; *accord Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, 163 N.E.3d 501, ¶ 24; *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43. Moreover, appellate courts "'should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.'" *Risner* at ¶ 28, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2; *accord Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589,

666 N.E.2d 631 (4th Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process."). Additionally, "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial." *Goldfuss*, 79 Ohio St.3d at 122.

**{¶46}** In the case sub judice, appellant did not argue that the trial court obviously erred by admitting the GAL's report or by considering the GAL's recommendation. We further point out that this court, along with other Ohio appellate courts, has refused to recognize purported Sup.R. 48 violations as reversible error. *E.g., In re K.L.*, 11th Dist. Portage No. 2021-P-0022, 2021-Ohio-3080, ¶ 63 ("the failure to comply with the Rules of Superintendence, even if a technical error, is not reversible"); *In re E.W.*, 4th Dist. Washington No. 10CA18, 2011-Ohio-2123, ¶ 12 (superintendence rules are internal housekeeping rules that do not create any substantive rights); *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 12 (superintendence rules are "administrative directives only, and are not intended to function as rules of practice and procedure"); *accord In re R.P.*, 2021-Ohio-4065, 181 N.E.3d 594,

¶ 31 (10th Dist.); *State v. Clark*, 9th Dist. Medina No. 20CA0020-M, 2021-Ohio-3397, ¶ 39; *State v. Klayman*, 4th Dist. Hocking No. 17CA13, 2018-Ohio-3580, ¶ 17; *see State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 41, quoting *Singer*, 50 Ohio St.2d at 110, 362 N.E.2d 1216 ("'[t]he Rules of Superintendence are not designed to alter basic substantive rights'") (Kennedy, J., concurring in part and dissenting in part).

**{¶47}** Moreover, appellant has not shown that the result of the trial court proceedings would have been different if the GAL's report had strictly complied with the superintendence rule. Appellant did not argue, for example, that the trial court would have rejected appellee's permanent custody motion and would have granted appellant's request to place the children in the foster mother's legal custody, if the GAL's report had strictly complied with the superintendence rule. Rather, appellant vaguely asserts that the purported inadequacies in the GAL's report violated her due process rights.

**{¶48}** Consequently, under the circumstances in the case sub judice, we do not believe that appellant can establish that the trial court plainly erred by considering the GAL's report.

B

**{¶49}** Appellant next argues that trial counsel's failure to call the GAL to testify at the permanent custody hearing constituted ineffective assistance of counsel.

**{¶50}** The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998); *e.g., In re J.P.B.*, 4th Dist. Washington No. 12CA34, 2013-Ohio-787, ¶ 23; *In re K.M.D.*, 4th Dist. Ross No. 11CA3289, 2012-Ohio-755, ¶ 60; *In re A.C.H.*, 4th Dist. Gallia No. 11CA2, 2011-Ohio-5595, ¶ 50. "'Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.'" *Wingo*, 143 Ohio App.3d at 666, quoting *Heston*.

**{¶51}** To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair

trial. *E.g., Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d674 (1984); *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 83; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

**{¶52}** The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 134 S.Ct. at 1088. "Prevailing professional norms dictate that with regard to decisions pertaining to legal proceedings, 'a lawyer must have "full authority to manage the conduct of the trial."'" *Obermiller* at ¶ 85, quoting *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶

24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Furthermore, "'[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton*, 134 S.Ct. at 1088, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted); *accord Hinton*, 134 S.Ct. at 1088, citing *Padilla*, 559 U.S. at 366; *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81.

**{¶53}** Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State*

*v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., Obermiller* at ¶ 84; *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶54} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome.'" *Hinton*, 134 S.Ct. at 1089, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require the defendant to affirmatively establish prejudice. *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002). As we have

repeatedly recognized, speculation is insufficient to demonstrate the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

**{¶55}** In the case at bar, we do not believe that appellant has demonstrated that trial counsel performed deficiently by failing to call the GAL to testify. Instead, counsel may have made a strategic decision that calling the GAL to testify would have been detrimental to appellant's case by amplifying the GAL's steadfast belief that the children's best interest demand that the court place them in appellee's permanent custody. *In re K.L.*, 11th Dist. Portage No. 2021-P-0022, 2021-Ohio-3080, ¶ 64 (counsel may have decided that cross-examining GAL would "have only reinforced the evidence" and would not have helped the mother's position).

{¶56} Furthermore, even if appellant could establish that counsel's decision not to call the GAL to testify was deficient, appellant has not demonstrated that the result of the proceeding would have been different if counsel had called the GAL to testify. Appellant has not asserted that the GAL's testimony would have differed from her recommendation or that it would have exposed severe inadequacies in her investigation into the children's situation such that the trial court would have questioned the GAL's recommendation.

We also note that, at the start of the permanent custody hearing, father's counsel asked the court to order the GAL to submit an updated report. When the court asked the GAL whether she believed that an updated report was necessary, she indicated that nothing had changed since her previous report and that it remained accurate. Consequently, we do not believe that appellant has established that trial counsel failed to provide effective assistance of counsel.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

34

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.