[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Kurt*, Slip Opinion No. 2022-Ohio-1627.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1627

STATE EX REL. WARE, APPELLANT, *v*. KURT, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Ware v. Kurt*, Slip Opinion No. 2022-Ohio-1625.]

*Mandamus—Public Records Act—Rules of Superintendence for the Courts of Ohio—Statutory damages—The Public Records Act, not the Rules of Superintendence, governs a request for the production of documents pertaining to the operations, procedures, and policies of a clerk of courts' office—The Public Records Act does not impose a timeliness requirement for responding to a public-records request made under R.C. 149.43(B)(3)— Judgment affirmed in part, reversed in part, and cause remanded.*

(No. 2021-0823—Submitted January 25, 2022—Decided May 18, 2022.)

APPEAL from the Court of Appeals for Summit County, No. 29622, 2021-Ohio-2025.

_____

**Per Curiam.**

**{¶ 1}** Appellant, Kimani Ware, an inmate at the Trumbull Correctional

Institution, filed a complaint for a writ of mandamus in the Ninth District Court of Appeals against appellee, Summit County Clerk of Courts Sandra Kurt. Ware seeks to compel Kurt to produce certain records under the Public Records Act, R.C. 149.43. The Ninth District granted summary judgment in Kurt's favor, holding that the proper vehicle by which to obtain all but one of the documents Ware requested is the Rules of Superintendence for the Courts of Ohio. As to the one requested document that the court of appeals found subject to the Public Records Act, the court rejected Ware's request because he did not comply with R.C. 149.43(B)(8), which requires the sentencing court to approve certain public-records requests made by inmates.

{¶ 2} Ware appeals. For the reasons discussed below, we affirm the court of appeals' judgment in part, reverse in part, and remand for further consideration.

### I. FACTS AND PROCEDURAL BACKGROUND

{¶ 3} In a December 2019 complaint for a writ of mandamus, Ware alleged that he sent a total of ten public-records requests in January 2019 by certified mail to the Summit County Clerk of Courts' office seeking the production of 37 different documents. He requested documents related to clerk's office employees, policies, and budget information, as well as grand-jury reports, certain oaths of office, the dockets of a specific judge for a specified period, and the transcript of a 9-1-1 call in his own criminal case. Ware alleged that Kurt did not respond to his requests, and he sought statutory damages under R.C. 149.43(C) for the alleged failure to produce the requested records.

{¶ 4} Kurt filed an answer and a motion for summary judgment. In her motion for summary judgment, Kurt argued that the complaint should be dismissed as moot because she had either provided Ware with the requested documents or explained why she was unable to do so. Ware filed a reply to Kurt's motion and his own motion for summary judgment. He admitted receiving some of the documents that he had requested but maintained that Kurt failed to provide

everything that he had requested. Ware also argued that he was entitled to statutory damages because Kurt had acted in bad faith, ignoring his January 2019 public-records requests and failing to promptly provide all the documents that are responsive to those requests.

{¶ 5} After reviewing the list of requested documents, the court of appeals found that Ware had requested only one record—the transcript of a 9-1-1 call in his own criminal case—that was subject to the Public Records Act. As to this record, the court held that Ware was not entitled to relief in mandamus for two reasons: (1) Kurt did not have possession of the transcript of the 9-1-1 call from Ware's criminal case and had informed Ware of that fact and (2) even if Kurt did have the transcript, Ware failed to obtain authorization from his sentencing judge to request that record as required by R.C. 149.43(B)(8).

{¶ 6} As to the remaining records requests, the court of appeals found that Ware had requested various policies, schedules, manuals, and employee information from the clerk of courts that fell " 'squarely within the definition of administrative records under Sup.R. 44(G)(1).' " 2021-Ohio-2025, 173 N.E.3d 1268, ¶ 13, quoting *State ex rel. Perry v. Cleveland Hts. Mun. Clerk of Courts*, 8th Dist. Cuyahoga No. 109916, 2020-Ohio-5193, ¶ 7. The court also found that the "other records" Ware had requested were "court records" under Sup.R. 44(B). 2021-Ohio-2025 at ¶ 13. Concluding that Ware should have sought these records under Sup.R. 44 through 47, rather than under the Public Records Act, and that Ware had failed to comply with R.C. 149.43(B)(8) regarding his request for the transcript of the 9-1-1 call, the court granted summary judgment in Kurt's favor. The court of appeals also denied Ware's request for statutory damages under R.C. 149.43(C)(2).

{¶ 7} Ware appealed to this court as of right.

## II. ANALYSIS

**{¶ 8}** Ware advances three propositions of law in support of reversing the Ninth District's decision granting summary judgment. We review decisions of the court of appeals granting summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. "Summary judgment is appropriate when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Id.*, quoting Civ.R. 56(C).

### A. Proposition of law Nos. 1 and No. 2:
### Whether the Ninth District erred in applying the Rules of Superintendence to all but one of the public-records requests

**{¶ 9}** Ware argues in his first proposition of law that the court of appeals erred when it found that Sup.R. 44 through 47, rather than R.C. 149.43(B)(1), apply to his public-records requests. In his second proposition of law, Ware contends that the court of appeals misinterpreted *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, in finding that the requested documents fell under the Rules of Superintendence. Ware's first two propositions of law are well taken in part. Although some of the requested records do fall under the Rules of Superintendence, the Public Records Act governs most of Ware's document requests.

**{¶ 10}** The threshold issue in public-records cases is whether the Public Records Act or the Rules of Superintendence govern the request. *Parisi* at ¶ 19. We must conduct this inquiry "even if the issue of the appropriate vehicle is not raised by the parties or by the lower courts." *Id.* at ¶ 20.

**{¶ 11}** The Public Records Act requires a public office to make copies of public records available to any person on request, within a reasonable period. R.C. 149.43(B)(1). But when a requester seeks public records from a court, the Rules of Superintendence generally apply. *Parisi* at ¶ 21-27 (the Rules of Superintendence

apply to requests for documents in attorney-discipline cases); *State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 11-15 (the Rules of Superintendence apply to access case documents only in cases commenced on or after July 1, 2009).

{¶ 12} Mandamus is the appropriate remedy to compel compliance with the Public Records Act. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. Mandamus is also the correct method by which to compel responses under the Rules of Superintendence. Sup.R. 47(B). Accordingly, the method by which a requesting party seeks to obtain public records in mandamus is significant. If the requester seeks public records through the incorrect vehicle, then he or she is not entitled to receive the records through a mandamus action. *Parisi*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, at ¶ 21.

{¶ 13} Ware requested 37 documents from Kurt, and he contends that all the requested documents are public records under R.C. 149.43. The court of appeals held that Ware's requests—except for the transcript of the 9-1-1 call in his criminal case—did not fall under the Public Records Act, because Ware sought access to "court records" that fell under the Rules of Superintendence.[1] This was error.

*1. Ware's requests for policies, schedules, manuals, and employee information for the clerk of courts*

{¶ 14} The superintendence rules identify two types of "court records": "case documents" and "administrative documents." Sup.R. 44(B). A "case document" is a document or information submitted to a court or filed with a clerk of courts in a specific case (e.g., exhibits, pleadings, orders), as well as any

---

1. Ware requested the transcript of a 9-1-1 call that was used in his 2003 criminal case. The court of appeals found that this document was subject to the Public Records Act. Ware did not challenge that determination on appeal.

document prepared by the court or the clerk of courts in a judicial action or proceeding (e.g., journals, dockets). Sup.R. 44(C)(1). An "administrative document" is "a document and information in a document created, received, or maintained by a court that serves to record the administrative, fiscal, personnel, or management functions, policies, decisions, procedures, operations, organization, or other activities *of the court*," subject to exclusions not relevant here. (Emphasis added.) Sup.R. 44(G)(1).

{¶ 15} In this case, the court of appeals found that the policies, schedules, manuals, and employee information that Ware had requested from the clerk of courts fell "squarely within the definition of administrative records in Sup.R. 44(G)(1)." 2021-Ohio-2025, 173 N.E.3d 1268, at ¶ 13, quoting *Perry*, 2020-Ohio-5193, at ¶ 7. But the administrative documents that Ware sought were not records "of [a] court" as contemplated by Sup.R. 44(G)(1). Although a clerk of courts does have possession of some "court records" that are governed by the superintendence rules, not every document held by the clerk of courts falls under those rules. The Summit County clerk of courts is an elected official. R.C. 2303.01. And the office of the clerk of courts " 'is an office separate and distinct from that of judge of the common pleas court.' " *State v. Leibold*, 2d Dist. Montgomery No. 25124, 2013-Ohio-1371, ¶ 45, quoting *State ex rel. Smith v. Culver*, 186 Ohio App.3d 534, 2010-Ohio-339, 929 N.E.2d 465, ¶ 43. Therefore, we find that the court of appeals erred in holding that the documents Ware requested pertaining to the operations, procedures, and policies of the clerk of courts' office were governed by the Rules of Superintendence. *See, e.g.*, *State ex rel. Ware v. Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, 170 N.E.3d 788; *State ex rel. Perry v. Byrd*, 8th Dist. Cuyahoga No. 109006, 2020-Ohio-34, ¶ 7, 11 (holding that records that document the operating procedures of the clerk of courts, namely the clerk's public-records policy and record-retention schedule, are subject to the Public Records Act).

*2. Ware's requests for "other records"*

{¶ 16} The court of appeals also found that "[t]he other records [Ware] requested f[e]ll under Sup.R. 44(B) as court records, including case and administrative documents." 2021-Ohio-2025, at ¶ 13. The court, however, did not identify the "other records" that it qualified as "court records" under Sup.R. 44(B). Based on our review of Ware's public-records requests, only four of the requested items fall under the superintendence rules. One item—the dockets of cases that Judge Oldfield presided over from October 1, 2018, through January 14, 2019— fits the description of a "case document" under Sup.R. 44(C)(1) because the documents that comprise that requested item were prepared by the clerk of courts in a judicial action or proceeding. Three other items—the grand-jury reports for Summit County jail for 2018, the grand-jury-schedule sheets for December 1, 2018, through January 14, 2019, and Judge Oldfield's oath of office—meet the definition of an "administrative document" under Sup.R. 44(G)(1) because they recorded the operations of the court.

{¶ 17} In sum, the documents sought by Ware in his public-records requests—except for the four items identified above—are governed by the Public Records Act, not the Rules of Superintendence. Therefore, the court of appeals erred in denying Ware's public-records requests for failure to proceed under the superintendence rules.

**B. Proposition of law No. 3:**

**Whether the Ninth District erred in refusing to award statutory damages**

{¶ 18} Ware contends that the court of appeals erred when it failed to award him statutory damages pursuant to R.C. 149.43(C). Ware argues that he is entitled to statutory damages because Kurt failed to produce the requested records within a reasonable period as required by R.C. 149.43(B).

{¶ 19} The court of appeals held that Ware was not entitled to statutory damages for Kurt's failure to provide the records that were governed by the

superintendence rules, because those rules do not authorize damages under any circumstances. As for the one request that the court of appeals determined fell under R.C. 149.43—the transcript of the 9-1-1 call in Ware's criminal case—the court found that Ware was not entitled to statutory damages because Kurt had no obligation to provide this record.

*1. The court of appeals erred in denying Ware's claim for statutory damages on the ground that the documents requested were governed by the Rules of Superintendence*

{¶ 20} Based on our resolution of the first two propositions of law, we find that the court of appeals erred in its rejection of Ware's statutory-damages claims on the ground that the requested documents were governed by the Rules of Superintendence. Ware objects to the length of time that it took for the clerk of courts to respond to his public-records requests. R.C. 149.43 (B)(1) states that "a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost *and within a reasonable period of time.*" (Emphasis added.) According to Ware, he submitted his public-records requests on January 22, 2019, but Kurt took "over a year" to respond and she responded only after Ware filed his mandamus complaint.

{¶ 21} Under the Public Records Act, a requester seeking statutory damages must prove that the request was delivered "by hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2). Ware avers that he sent all ten public-records requests by certified mail.

{¶ 22} Kurt claims that her office first learned of Ware's requests on January 2, 2020, when she received his mandamus complaint. The clerk's office maintains that it sent responsive documents to Ware on January 29, 2020, and that 27 days is not an unreasonable amount of time to have answered Ware's numerous requests.

**{¶ 23}** In short, there is a dispute of fact as to whether Ware requested the documents in January 2019 or January 2020. And because the court of appeals addressed the merits of Ware's statutory-damages claim only as to the transcript of the 9-1-1 call, we remand to the court of appeals to resolve this issue as to the other requests that we find subject to the Public Records Act.

*2. The court of appeals did not err in denying Ware's claim for statutory damages regarding his request for the transcript of the 9-1-1 call in his criminal case*

**{¶ 24}** The court of appeals found that Kurt had informed Ware that she did not have possession of the transcript of the 9-1-1 call from Ware's criminal case but that even if she did have the transcript, Ware failed to obtain authorization from his sentencing judge to request that record as required by R.C. 149.43(B)(8). For the following reasons, we find that Ware has not shown that Kurt "failed to comply with an obligation" under R.C. 149.43(B) with respect to the transcript of the 9-1-1 call.

**{¶ 25}** As a prison inmate, Ware is not entitled to the transcript of the 9-1-1 call in his criminal case without a finding by his sentencing judge that "the information sought in the public record is necessary to support what appears to be a justiciable claim of the person." R.C. 149.43(B)(8). Because Ware failed to obtain sentencing-court approval, Kurt had no obligation to provide this record under R.C. 149.43(B) even if it were in her possession. *See State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 16-17; *Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, 170 N.E.3d 788, at ¶ 15-16.

**{¶ 26}** As noted, Ware maintains that he is entitled to statutory damages because Kurt took over a year to respond to his public-records requests. But Ware does not dispute either (1) that Kurt justifiably denied his request for the transcript of the 9-1-1 call or (2) that Kurt provided him with an explanation for the denial as required by R.C. 149.43(B)(3). Therefore, we need not determine whether Kurt responded to Ware's request for the transcript of the 9-1-1 call within a reasonable

period of time. Unlike R.C. 149.43(B), which requires public records to be "promptly prepared" and made available "within a reasonable period of time" upon request, R.C. 149.43(B)(3) does not impose a timeliness requirement. *See State ex rel. Ware v. Giavasis*, 160 Ohio St.3d 383, 2020-Ohio-3700, 157 N.E.3d 710, ¶ 11-12. Accordingly, we affirm the court of appeals' determination that Ware is not entitled to statutory damages under R.C. 149.43(C) for the transcript of the 9-1-1 call from his criminal case.

### C. Kurt's claim that the matter has been rendered moot

{¶ 27} As a final matter, Kurt argues that her office has provided all documents that are responsive to Ware's public-records requests, rendering this matter moot. The evidence in the record does not support Kurt's mootness claim. *See State ex rel. Ellis v. Cleveland Police Forensic Laboratory*, 157 Ohio St.3d 483, 2019-Ohio-4201, 137 N.E.3d 1171, ¶ 7 (this court will address the merits of an appeal in the absence of a record that clearly demonstrates mootness).

{¶ 28} Kurt submitted a list of the records that she purportedly provided to Ware and supporting affidavits from Assistant Prosecutor Colleen Sims and Kurt's office manager, Jackie Ludle. Both Sims and Ludle aver that some documents were sent to Ware but that other documents were not produced because the requests were overly broad and because some documents do not exist. As for the list of records that were allegedly provided, Kurt did not submit copies of the documents as corroborating evidence in this case. *See State ex rel. Ware v. Crawford*, ___ Ohio St.3d ___, 2022-Ohio-295, ___ N.E.3d ___, ¶ 15. For his part, Ware submitted an affidavit conceding that he received "some" of the records he had requested, but he did not identify which records he had received.

{¶ 29} Because the record does not clearly demonstrate (1) that Kurt sent Ware the documents that she claims to have provided to him and (2) whether Kurt had legitimate reasons for rejecting the remaining document requests, we decline to resolve the appeal on grounds of mootness.

**{¶ 30}** Even if Kurt did provide Ware with all the requested records, this action remains viable as to Ware's request for statutory damages. If Ware can establish on remand that Kurt failed to comply with an obligation under R.C. 149.43(B), he may be entitled to statutory damages even if he does not prevail on his mandamus claim. *See Giavasis*, 160 Ohio St.3d 383, 2020-Ohio-3700, 157 N.E.3d 710, at ¶ 10.

### III. CONCLUSION

**{¶ 31}** For the foregoing reasons, we affirm in part and reverse in part the judgment of the court of appeals, and we remand this cause to the Ninth District Court of Appeals to determine (1) which documents subject to the Public Records Act were produced to Ware, (2) whether Kurt had legitimate reasons for rejecting Ware's requests as to the documents that were not produced, and (3) whether Ware is entitled to statutory damages for the document requests that are subject to the Public Records Act.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

O'CONNOR, C.J., concurs, with an opinion.

KENNEDY, J., concurs in part and dissents in part, with an opinion.

DEWINE, J., concurs in part and dissents in part for the reasons stated in Justice Kennedy's opinion and in *State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 191, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 60-68 (DeWine, J., concurring in judgment only in part and dissenting in part).

---

**O'CONNOR, C.J., concurring.**

**{¶ 32}** I fully concur in the majority's decision. I write separately to respond to the opinion concurring in part and dissenting in part so that the reader

has a complete picture of the prevailing view on the interaction between the Public Records Act, R.C. 149.43, and the Rules of Superintendence for the Courts of Ohio. Thus, I reiterate what the majority stated in *State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 17-18:

> This court is remanding this case to the court of appeals to apply the Public Records Act, and nothing in our decision exempts court records from disclosure or denies a right to court records. Sup.R. 45(A) states that "[c]ourt records are presumed open to public access." Sup.R. 44 recognizes that state or federal law—such as the Public Records Act—may exempt a record from disclosure. Sup.R. 44(C)(2)(a) and (G)(2)(a). And Sup.R. 47(B) states that mandamus relief is available to someone aggrieved by the failure of a court or clerk of court to comply with the public-access provisions of the Rules of Superintendence. Requiring those seeking court records and court administrators responding to such requests to comply with the public-access provisions of the Rules of Superintendence when appropriate is hardly equivalent to this court's exempting itself from the Ohio Civil Rights Act, R.C. 4112.01 et. seq., as the second separate opinion argues. Ultimately, the public-access provisions of the Rules of Superintendence and the Public Records Act can function harmoniously. To the extent that the separate opinions are concerned with the scope or impact of the rules, a rule change, if found to be worthwhile, may be proposed, submitted for public comment, and vetted for approval.
>
> It is true that "the clerk is without discretion to disregard a statutory mandate," opinion of Kennedy, J., concurring in judgment

only in part and dissenting in part at ¶ 31, and compliance with the public-access provisions of the Rules of Superintendence does nothing to upset that duty. Speculation about contrived conflicts does nothing to further the law regarding open access to court documents. The presumptions of open access in the Public Records Act and the public-access provisions of the Rules of Superintendence function together in the sphere of the judicial branch to address the particularized needs of the court and parties that access the courts.

(Brackets added in *Parker Bey*.)

{¶ 33} I also include the following passage from a decision of this court in a prior case that was filed by the same relator as in this case, Kimani Ware:

The fact that Ware cited only the Public Records Act *in his public-records requests* is not fatal to his demand for documents that are governed by the Rules of Superintendence. "Generally, it is not necessary to cite a particular rule or statute in support of a records request until the requester attempts to satisfy the more demanding standard applicable when claiming that he is entitled to a writ of mandamus to compel compliance with the request." *Parker Bey* at ¶ 14. However, because Ware has invoked only the Public Records Act *in this action*, Ware is not entitled to a writ of mandamus as to any documents governed by the Rules of Superintendence. *State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, ¶ 21; *see also State ex rel. Richfield v. Laria*, 138 Ohio St.3d 168, 2014-Ohio-243, 4 N.E.3d 1040, ¶ 8 ("Sup.R. 44 through 47 deal specifically with the

procedures regulating public access to court records and are the sole vehicle for obtaining records in actions commenced after July 1, 2009").

(Emphasis sic.)  *State ex rel. Ware v. Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, 170 N.E.3d 788, ¶ 19.

{¶ 34} To be sure, nothing in the Rules of Superintendence prevents Ware from obtaining the documents he seeks.  But it is not for this court or the clerk of courts' office to properly package his request for mandamus relief.  *See Parisi* at ¶ 27; *Ware* at ¶ 19.

---

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 35} I concur in part and dissent in part.  I agree with the majority's conclusion that the bulk of the records sought by relator, Kimani Ware, from respondent, Summit County Clerk of Courts Sandra Kurt, are public records subject to disclosure under the Public Records Act, R.C. 149.43.

{¶ 36} I disagree with the majority's conclusion that the Rules of Superintendence for the Courts of Ohio, not the Public Records Act, apply to four of Ware's requests for records—the dockets of cases that Judge Oldfield presided over from October 1, 2018, through January 14, 2019; the grand-jury reports regarding the Summit County jail for 2018; the grand-jury-schedule sheets for December 1, 2018, through January 14, 2019; and Judge Oldfield's oath of office. First, I would find that those records *are* public records and that the Rules of Superintendence do not and cannot eliminate the public's substantive right, afforded by the Public Records Act, to inspect and copy them.  *See State ex rel. Parisi v. Dayton Bar Assn. Certified Grievance Commt.*, 159 Ohio St.3d 211, 2019-Ohio-5157, 150 N.E.3d 43, ¶ 57 (Kennedy, J., concurring in part and concurring in

judgment only in part). Second, a review of the statutory duties of the independently elected clerk of courts shows that these records are related to the work of the clerk of courts, are kept by that public office, and, therefore, are public records under the Public Records Act.

{¶ 37} I also disagree with the majority's determination that Ware is not entitled to statutory damages if Kurt failed to inform him for more than one year that she had denied his request for the transcript of the 9-1-1 call from his criminal case. Since I would find that all of the records Ware requested are public records, I would reverse the judgment of the Ninth District Court of Appeals and remand the matter to that court to determine when and in what manner Ware delivered his public-records requests to Kurt. If the requests were delivered by certified mail in January 2019 as Ware claims, then the court of appeals should (1) determine whether Kurt failed to meet her obligations under R.C. 149.43(B), including her obligation to timely provide the reasons for her denial of a public-records request, (2) order the production of responsive documents, and (3) award appropriate statutory damages and costs.

*The 1968 Modern Courts Amendment limits our power*

{¶ 38} "The measure of power is its limits. Respecting the limits of power is essential to our American form of government. Anything less is an affront to it." *League of Women Voters of Ohio v. Ohio Redistricting Comm.* ___ Ohio St.3d ___, 2022-Ohio-1235, ___ N.E. 3d ___, ¶ 88 (Kennedy, J., dissenting). This court does not have the power to limit Ohioans' access to public records.

{¶ 39} A final draft of the Modern Courts Amendment recommended that Ohio adopt a unified-court system. William W. Milligan and James E. Pohlman, *The 1968 Modern Courts Amendment to the Ohio Constitution*, 29 Ohio St.L.J. 811, 843 (1968). However, that measure failed to make it to the ballot, having been struck down by the General Assembly. *Id.* at 843-844. Instead of a unified-court

system, the Modern Courts Amendment left the courts under local control with one exception—case-management guidelines.

{¶ 40} The Ohio Constitution gives this court authority to promulgate two distinct sets of rules: the Rules of Superintendence, Article IV, Section 5(A)(1), and the rules of practice and procedure, Article IV, Section 5(B).

{¶ 41} The Ohio Constitution authorizes this court to adopt Rules of Superintendence that are consistent with this court's *general superintending power* over all courts in this state. That power, however, is limited to addressing the *case-management problems* that cause delays in processing cases, which were part of the stimulus for the Modern Courts Amendment in the first place. *See State ex rel. Parker Bey v. Byrd,* 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, ¶ 38 (Kennedy, J., concurring in judgment only in part and dissenting in part). The purpose of the Rules of Superintendence is reflected in its preface:

> The foundation of our government rests upon the confidence of the people in the ability of their courts to achieve liberty and justice for all under the law. The fair, impartial, and speedy resolution of cases without unnecessary delay maintains this confidence, safeguards the rights of litigants to the just processing of their causes, and earns the trust of the public.
>
> To secure these ends, the Supreme Court of Ohio adopts the following Rules of Superintendence for the Courts of Ohio to serve the public interest that mandates prompt disposition of all causes, at all times, in all courts of this state.

{¶ 42} The framers of the Modern Courts Amendment of 1968 granted this court limited authority to promulgate rules of practice and procedure governing all

courts under Article IV, Section 5(B) of the Ohio Constitution, which provides as follows:

> The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January * * *. Such rules shall take effect * * * unless * * * the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

{¶ 43} The plain language of Article IV, Section 5(B) constrains this court's ability to promulgate rules superseding enactments of the General Assembly in two ways. First, the Ohio Constitution expressly prohibits the adoption of any rules of practice or procedure that affect substantive rights. This constraint is express: "[R]ules shall not abridge, enlarge, or modify any substantive right." *Id*. After the Modern Courts Amendment, "the right to establish the substantive law in Ohio remained with the legislative branch of government." *Havel v. Villa St. Joseph*, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d 1270, ¶ 2. Second, the Ohio Constitution gives the General Assembly express authority to accept or reject promulgated rules of practice or procedure that, if accepted, will eclipse all laws in conflict with such rules. Ohio Constitution, Article IV, Section 5(B). The General Assembly's veto power over proposed court rules ensures legislative oversight over practice and procedure in the courts of this state.

{¶ 44} In contrast, "[t]he Rules of Superintendence are not designed to alter basic substantive rights," *State v. Singer*, 50 Ohio St.2d 103, 110, 362 N.E.2d 1216 (1977), and " '[t]hey are not the equivalent of rules of procedure and have no force

equivalent to a statute,' " *Parker Bey*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57, at ¶ 42 (Kennedy, J., concurring in judgment only in part and dissenting in part), quoting *State v. Gettys*, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (3d Dist.1976). Consequently, *no* rule, whether of superintendence or of practice or procedure, promulgated by this court can affect a substantive right created by statute.

*The Public Records Act grants substantive rights*

{¶ 45} We have indicated that a substantive right is one that the law protects and permits a person to enforce and includes rights created by the United States Constitution, the Ohio Constitution, statutes, the common law, and rules of procedure. *See Havel* at ¶ 17.

{¶ 46} Common law recognized the right of the people to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); *State ex rel. Scripps Howard Broadcasting Co. v. Cuyahoga Cty. Court of Common Pleas, Juv. Div.*, 73 Ohio St.3d 19, 22, 652 N.E.2d 179 (1995). This common-law right, albeit qualified, is enshrined in the guarantee of the public's right to open courts under Article I, Section 16 of the Ohio Constitution. *State ex rel. Cincinnati Enquirer v. Winkler*, 101 Ohio St.3d 382, 2004-Ohio-1581, 805 N.E.2d 1094, ¶ 8-9, *superseded by statute on other grounds as stated in State v. Hubbard*, ___ Ohio St.3d ___, 2021-Ohio-3710, ___ N.E.3d ___.

{¶ 47} And in 1963, "the General Assembly codified the public's right to access of government records" by enacting R.C. 149.43. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 81, 526 N.E.2d 786 (1988).

{¶ 48} The Public Records Act defines "public record" as "records kept by any public office." R.C. 149.43(A)(1). A "[p]ublic office includes *any* state agency." (Emphasis added.) R.C. 149.011(A). And a "[s]tate agency includes * * * any court or judicial agency." R.C. 149.011(B).

**{¶ 49}** That there is, in general, a substantive right to access records of court proceedings that have historically been open to the public is beyond debate. *Scripps Howard Broadcasting Co.*, 73 Ohio St.3d at 20, 652 N.E.2d 179, citing *Press-Enterprise Co. v. Superior Court of California for Riverside Cty.*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), and *In re T.R.*, 52 Ohio St.3d 6, 556 N.E.2d 439 (1990), paragraph two of the syllabus.

**{¶ 50}** In enacting the Public Records Act, "the Ohio General Assembly sought to codify the *right of the people* of Ohio to observe their own government and scrutinize its decisions." (Emphasis added.) *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 19, citing *Kish v. Akron,* 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at ¶ 16-17. "The Ohio Public Records Act grants [the people of Ohio] the 'substantive right to inspect and copy public records.' " *Id.*, quoting *State ex rel. Beacon Journal Publishing Co. v. Waters*, 67 Ohio St.3d 321, 324, 617 N.E.2d 1110 (1993).

**{¶ 51}** The default rule then, is that there is a clear legal right to access court records and no court rule, whether of superintendence or of practice or procedure, can abridge or modify that substantive right. Ohio Constitution, Article IV, Sections 5(A) and (B).

**{¶ 52}** In a series of recent decisions, however, a majority of this court has held that the Rules of Superintendence now control access to court records. However, the right to access public records in general and court records in particular is a substantive right that this court lacks the authority to abridge through its rulemaking power. The Rules of Superintendence may provide guidance to courts in complying with the public-records law, but those rules cannot limit access to public records that is protected by the law, grant access to public records that is denied by the law, or eliminate any remedy that is provided by the law to enforce it.

*The clerk, not the court, is the public-records custodian*
*of the records that Ware sought*

{¶ 53} Kurt is the clerk of the court of common pleas of Summit County. A clerk of the court of common pleas is a creature of statute; he or she is independently elected to a four-year term of office, R.C. 2303.01, and is generally required by statute to file, keep, and maintain certain documents, *see* R.C. 2303.08.

{¶ 54} The clerk is required to file and "carefully preserve" in the clerk's office "all papers delivered to him for that purpose in every action or proceeding." R.C. 2303.09. The clerk is required to keep "at least four books." R.C. 2303.12. These include the appearance docket, the trial docket, the journal, and the execution docket. *Id.* The clerk is required to "*keep and make readily available to the public the machine and equipment necessary to reproduce the records and information in a readable form.*" (Emphasis added.) *Id.* The clerk is also required to maintain entries on the appearance docket regarding the commencement of an action or proceeding, R.C. 2303.13, and to keep the "journals, records, books, and papers appertaining to the court and record its proceedings," R.C. 2303.14.

{¶ 55} The clerk is not a "court" subject to the Rules of Superintendence. *See* Article IV, Section 5(A)(1). Moreover, a clerk is not a judicial officer and cannot exercise judicial power. *State ex rel. Glass v. Chapman*, 67 Ohio St. 1, 65 N.E. 154 (1902), syllabus; *see also Mellinger v. Mellinger*, 73 Ohio St. 221, 227, 76 N.E. 615 (1906); *Hocking Valley Ry. Co. v. Cluster Coal & Feed Co.*, 97 Ohio St. 140, 141-142, 119 N.E. 207 (1918). Instead, R.C. 2303.26 provides that "[t]he clerk of the court of common pleas shall exercise the powers conferred and perform the duties enjoined upon the clerk *by statute and by the common law*; and in the performance of official duties the clerk shall be under the direction of the court [of common pleas]." (Emphasis added.)

{¶ 56} With this general understanding of the statutory duties of the clerk, I turn to each of Ware's four requests for public records that I believe fall within the purview of the Public Records Act.

{¶ 57} **The docket of cases that Judge Oldfield presided over from October 1, 2018, through January 14, 2019.** As set forth above, R.C. 2303.12 requires the clerk to keep the trial docket and duplicates thereof. Because the General Assembly requires the clerk to keep and maintain the trial docket of cases from October 1, 2018, through January 14, 2019, they are public records within the authority and control of the clerk.

{¶ 58} Under R.C. 149.43(A)(1), a public record includes "records kept by any public office," and as noted above, the clerk's office is the public office that is responsible for maintaining the common pleas court's dockets.

{¶ 59} In her response to Ware's public-records request, Kurt asked whether he was requesting only the criminal docket because if so, "approximately 90 cases fit within this request and * * * staff would need to check each case to make sure it had not been sealed."

{¶ 60} **The grand-jury reports for the Summit County jail for 2018.** R.C. 2939.21 requires the grand jury to visit the county jail every three months to "examine its condition, and inquire into the discipline and treatment of the prisoners, their habits, diet, and accommodations." The grand jury is required to report its findings, in writing, to the court of common pleas and, as set forth above, R.C. 2303.14 requires the clerk to "keep the journals, records, books, and papers appertaining to the court." Moreover, the clerk of the court of common pleas is required to "forward a copy of the report to the department of rehabilitation and correction." R.C. 2939.21. To forward a copy, of course, is to keep a copy, and the clerk therefore has an independent duty to maintain these reports as public records. It follows that grand-jury reports pertaining to the Summit County jail are public records under the control of the clerk.

{¶ 61} Kurt seems unaware of the prison-visit-report statute (R.C. 2939.21). In responding to Ware's request for the "Grand Jury Reports of the Summit County Jail for the year 2018, that is recorded in the Summit County clerk of courts office" (underlining sic), Kurt stated, "This request is unclear. If you mean, the Grand Jury Vote and Schedule Sheets, this request, for a year of these sheets is vague and overbroad. Over 4,000 cases were presented to the Summit County grand jury in 2018."

**{¶ 62} The grand-jury-schedule sheets for December 1, 2018, through January 14, 2019 "for Indictments [that were] returned [as] 'a true Bill' or 'No Bill.' "** Kurt does not deny that she maintains the records that are the subject of this particular request. Rather, in her response to Ware's request, she states that the request is overly broad because a person would have to review hundreds of grand-jury cases to ensure that records from a sealed case or secret indictment would not be produced. Kurt requested that Ware narrow his request. However, as set forth above, R.C. 2303.14 requires the clerk to keep records like the grand-jury schedules requested by Ware. R.C. 149.43(B)(1) also requires a public-records custodian to make available to a requester all information contained in a public record that is not exempt from disclosure; the public-records custodian must redact those portions of the public record that are exempt from disclosure and notify the requester that the record was redacted or make the redaction plainly visible. In my view, a request for a grand-jury schedule for a 45-day period is not overly broad. These schedules may be retrieved, and it requires only a computer check to determine whether any requested information involves sealed cases. The request is not for a broad category of records, is not unreasonable in scope, and does not seek a complete duplication of voluminous files. *See State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 17-19. And it is Kurt's burden to prove the request was overly broad.

{¶ 63} **Judge Oldfield's oath of office.** R.C. 3.23 requires every judge of a court of record to take an oath of office, and the person administering the oath is required to sign the certificate of the oath, which must be transmitted to the clerk of the respective court. The clerk of courts is then required to "transmit" a copy of the certificate to the supreme court. *Id.* "If the certificate of oath is not transmitted to the clerk of the court within twenty days from the first day of the judge's official term, the judge is deemed to have refused to accept the office, and that office shall be considered vacant." *Id.* As with the above requests, Judge Oldfield's oath of office is a "record[] kept by any public office," R.C. 149.43(A)(1), and it is subject to release under the Public Records Act. In her response to Ware's request for this public record, Kurt claims to have produced the record.

{¶ 64} Kurt keeps each of the records requested by Ware in these four requests as part of her statutory duties as clerk of courts, so the Public Records Act is controlling. The Public Records Act requires a "person responsible for public records" to make copies of requested public records available to the requester within a reasonable period of time. R.C. 149.43(B)(1). And R.C. 2303.12 requires the clerk to "*keep and make readily available to the public* the machine and equipment necessary to reproduce the records and information in a readable form." (Emphasis added.) This court has held that "[w]hen a statute imposes a duty on a particular official to oversee records, that official is the 'person responsible' under R.C. 149.43(B)." *State ex rel. Mothers Against Drunk Drivers v. Gosser*, 20 Ohio St.3d 30, 485 N.E.2d 706 (1985), paragraph two of the syllabus. Therefore, under the Public Records Act, the clerk is the person responsible for the public records that the office of the clerk of courts maintains, including court records maintained under R.C. 2303.09 and 2303.14.

{¶ 65} The clerk of courts' role in the scheme of the Public Records Act comes as no surprise to the many Ohioans who access court records in the offices of clerks of courts across the state or online on clerks' websites every day. The

public knows that court records are public records and they do not need to ask a judge for permission to see those records or to make a copy of those records. They simply walk into the clerk's office or go online.

{¶ 66} Because Kurt was the person responsible for the public records that Ware sought, she had a duty to promptly prepare copies of the responsive records. Because the appellate court held that the requested records were court records that Ware should have requested under the Rules of Superintendence, it failed to consider whether Kurt had met her obligations under R.C. 149.43(B)(1) to make copies of the requested records available to Ware within a reasonable time and, under R.C. 149.43 (B)(3), to provide Ware with an explanation, including legal authority, for any denial of his requests. As is discussed more fully below, a denial of a public-records request with an explanation also has to be provided to the requester within a reasonable time.

{¶ 67} The General Assembly has prescribed that when the people's right of access to public records has been wrongfully denied, a mandamus action may be commenced to obtain a judgment that orders the person responsible for the public record to comply with the requirements of the Public Records Act, that costs and reasonable attorney fees may be awarded, and if applicable, that statutory damages may also be awarded. On remand, I would order the court of appeals to determine whether Kurt complied with the Public Records Act regarding the four requests discussed above, along with the other requests the majority orders the court of appeals to consider.

*A timely response to Ware's request for the transcript of the 9-1-1 call*

*was required*

{¶ 68} I agree with the majority that R.C. 149.43(B)(8) controls Ware's request for a copy of the transcript of the 9-1-1 call in his criminal case. I further agree that because Ware did not seek prior approval from the sentencing judge to obtain a copy of the transcript, he is not entitled to that record. However, I disagree

with the majority's conclusion that he was not entitled to a timely response from Kurt explaining why she was denying his public-records request. The Public Records Acts requires a public-records custodian to provide notice of the denial of a public-records request within a reasonable period of time. R.C. 149.43(B)(1). Therefore, Ware may be eligible for statutory damages.

{¶ 69} At the time Ware claims to have made his request for the transcript of the 9-1-1 call, in January 2019, R.C. 149.43(C)(2) provided that an award of statutory damages hinged on whether the public-records request was made by certified mail, by hand delivery, or by electronic submission.

{¶ 70} It was only after Ware filed this mandamus action in December 2019 that Kurt provided him with any response regarding his request for the transcript of the 9-1-1 call. If Ware delivered this request to Kurt by certified mail in January 2019 and Kurt did not respond to the request until after Ware filed the mandamus action in December 2019, then Kurt failed to fulfill the requirement to "provide the requester with an explanation, including legal authority, setting forth why the request was denied." R.C. 149.43(B)(3). Therefore, in my opinion, Kurt's explanation for the denial came too late.

{¶ 71} Seemingly, the timing of when a public-records custodian must provide a requester with a denial and the legal reasoning behind the denial under R.C. 149.43(B)(3) makes no difference to the majority. This is apparent from the majority's conclusion that Ware is not eligible for statutory damages even if Kurt failed for over a year to inform him that his request was denied and to provide an explanation for the denial.

{¶ 72} The majority concludes that there is no deadline under the Public Records Act for a public-records custodian to provide an explanation to a requester when a record request is denied. But if that were true, the obligation to respond would be no obligation at all. The time available to respond would be limitless. However, the General Assembly included a temporal requirement in the Public

Records Act. It requires that a public-records custodian promptly prepare a public record that has been requested. R.C. 149.43(B)(1). Based on the majority's holding in this case, if there is no public record that matches the public-records request or if an exemption to the public-records request applies, then the public-records custodian has no duty to do anything. This statement of law by the majority should be alarming to every Ohioan who seeks to observe their own government and scrutinize its decisions. *Kish*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, at ¶ 16.

{¶ 73} "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). R.C. 149.43(B) requires a public-records custodian to promptly prepare responsive records. If that obligation is disconnected from the public-records custodian's duty to inform the requester when a public-records request is being denied, then two predictable outcomes are certain. First, the requester will have no idea that his or her public-records request is being denied. Second, the requester will have no idea whether the public-records custodian has failed to fulfill his or her duty to promptly produce the requested records. Surely, if the public-records custodian has both a duty to promptly produce records and a duty to inform the requester why a record is not available for production, then the public-records custodian has an obligation to *promptly* alert the requester of the reason for a request's denial. It is only after the requester is informed that the public-records request is not being fulfilled that a requester may know that the public-records custodian has failed to meet his or her obligations under R.C. 149.43(B).

{¶ 74} The outcome of this case flies in the face of our recognition that "[t]he primary duty of a public office when it has received a public-records request is to promptly provide any responsive records within a reasonable amount of time

and when a records request is denied, to inform the requester of that denial and provide the reasons for that denial." *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11, citing R.C. 149.43(B)(1) and (3). In *Cordell*, this court awarded statutory damages when a sheriff failed to respond to a public-records request, even after this court held that the requester had failed to prove that the requested records existed or that they were in the custody of the sheriff's office. *Id.* at ¶ 13-14.

{¶ 75} R.C. 149.43(C)(3)(b)(i) establishes a time within which a public-records custodian must provide some response to a public-records request. That provision states that attorney fees may be awarded when "[t]he public office or the person responsible for the public records failed to respond affirmatively or negatively to the public records request in accordance with the time allowed under division (B) of this section." *Id.* The time allowed under R.C. 149.43(B) is "a reasonable period of time," which is set forth in R.C. 149.43(B)(1). Kurt was obligated to respond to Ware's request with a denial that included the legal reason or reasons therefor and to do so within a reasonable time. If the delay was as long as Ware claims, it was unreasonable.

{¶ 76} If mandamus is available to enforce a public-records custodian's obligation to promptly prepare a public record and make it available to the requester, R.C. 149.43(C)(1)(b), then it is also available for a requester "aggrieved by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section," R.C. 149.43(C)(1). Mandamus is available only when there is a clear legal duty for the public-records custodian to act. If there is no time requirement for a public-records custodian to explain his or her denial of a public-records request, then there is no clear legal duty to enforce in mandamus.

{¶ 77} Because the public-records custodian has a duty to promptly provide responsive records under R.C. 149.43(B)(1), the custodian's failure to deny a

public-records request and to provide reasons for the denial within a reasonable period of time makes the public office liable for statutory damages. *See Cordell,* 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, at ¶ 13. Whether the public-records custodian complied with his or her statutory duty to respond to a public-records request within a reasonable period of time " 'depends upon all of the pertinent facts and circumstances.' " *Id.* at ¶ 12, quoting *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10. The person requesting the records "bears the burden of demonstrating that the [public-records custodian's] response to [the] public-records requests was unreasonably delayed." *Id.*, citing *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 44. The key factual determination for the appellate court on remand will be whether Ware delivered his requests to the appropriate public office by certified mail when he says he did.

{¶ 78} In its shortsighted holding today, the majority denies Ware statutory damages for Kurt's year-long failure to provide a denial with legal reasoning for Ware's request for the 9-1-1 transcript from his criminal case. Ware is not entitled to the record because of his failure to seek the leave of the sentencing judge, but certainly nothing in R.C. 149.43(B)(8) relieves a public-records custodian of his or her duty to respond to Ware's request for public records with a denial and explanation with legal reasoning. Does Ware not deserve, like every other citizen, an explanation from the public-records custodian for the denial of his request with the legal reasoning behind it? Is the problem not what Ware is requesting but from where he is requesting it?

{¶ 79} The implications of the majority's decision today are far reaching. This case stands for the proposition that anyone who requests a public record and gets no response for up to a year from a public-records custodian is ineligible for statutory damages. That holding cannot sit side-by-side with the requirement in RC. 149.43(B)(1) that a public-records custodian promptly prepare public records

and make them available to the requester within a reasonable amount of time. Every Ohioan who exercises his or her statutory right to seek records from public offices will now be hamstrung by the majority's holding allowing a public office to deny a public-records request in silence. That is not the prompt *response* required by the Public Records Act. Rather, the majority's decision permits the public office to sit on its hands and avoid giving assistance to interested Ohioans seeking to understand what their government is doing and to hold their government accountable. The intent of the Public Records Act was to shine a light on government, but today, the majority leaves Ohioans in the dark.

*Conclusion*

{¶ 80} For these reasons, I would hold that the documents Ware requested pertaining to the operations, procedures, and policies of the clerk of courts' office; the dockets of cases that Judge Oldfield presided over from October 1, 2018, through January 14, 2019; the grand-jury reports for Summit County jail for 2018; the grand-jury-schedule sheets for December 1, 2018, through January 14, 2019; and Judge Oldfield's oath of office are all public records.

{¶ 81} I would order the Ninth District Court of Appeals to consider all of Ware's requests in the context of the Public Records Act and to determine whether Kurt complied with her statutory duties to provide a prompt response to Ware's requests. I would also order the court to determine whether statutory damages should be awarded to Ware for Kurt's alleged failure to respond to any of Ware's requests in a timely manner, including his request for the transcript of the 9-1-1 call in his criminal case. To the extent the majority decision holds otherwise, I dissent.

DEWINE, J., concurs in the foregoing opinion.

_____

Kimani Ware, pro se.

Sherri Bevan Walsh, Summit County Prosecuting Attorney, and John Galonski, Assistant Prosecuting Attorney, for appellee.

January Term, 2022

_____